## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMSC-027

Filing Date: June 8, 2010

Docket No. 30,827

STATE OF NEW MEXICO,

       Plaintiff-Respondent,

v.

MARK SIMS,

       Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
Neil C. Candelaria, District Judge

Albright Law & Consulting
Jennifer Rebecca Albright
Albuquerque, NM

for Petitioner

Gary K. King, Attorney General
Ralph E. Trujillo, Assistant Attorney General
Santa Fe, NM

for Respondent

## OPINION

**CHÁVEZ, Justice.**

**{1}** A police officer found Defendant passed out or asleep behind the wheel of his vehicle located in a commercial parking lot. The keys were on the front passenger seat of the vehicle. While awakening Defendant, the officer detected a strong odor of alcohol and observed that Defendant had bloodshot, watery eyes. Defendant admitted to drinking alcohol, failed field sobriety tests, and submitted to two breath tests, the results of which were .19 and .18 respectively. Defendant was charged with driving while intoxicated (DWI), contrary to NMSA 1978, Section 66-8-102 (1953, as amended through 2004).

**{2}** Defendant moved to dismiss the charge, contending that he was not in actual physical

control of the vehicle since the keys were not in the ignition. On these stipulated facts, the metropolitan court ruled at trial that Defendant was in actual physical control of the vehicle because if he roused himself, he could easily put the vehicle in motion. Defendant subsequently pled guilty to one count of driving while intoxicated, reserving the right to appeal the metropolitan court's ruling that he was in actual physical control of his vehicle to the district court. On appeal, the district court affirmed the metropolitan court's finding that Defendant was in actual physical control because he had possession of the keys and could have directly started the car. The district court's ruling was then appealed to the Court of Appeals. A majority of the Court of Appeals, relying on *State v. Johnson,* 2001-NMSC-001, ¶¶ 1, 19, 130 N.M. 6, 15 P.3d 1233 (filed in 2000), affirmed the district court's finding that Defendant was in actual physical control because "there was nothing to prevent Defendant from awakening, reaching for the keys, and driving from the parking lot." *State v. Sims*, 2008-NMCA-017, ¶ 9, 143 N.M. 400, 176 P.3d 1132. The dissent would have reversed the trial court because "actual" physical control should require more than potential or possible physical control and any expansion of the law should be for the Legislature to enact. *Id.* ¶¶ 20-22 (Sutin, C.J., dissenting). In any event, both the majority and the dissenting judges urged this Court to reconsider *Johnson. Sims*, 2008-NMCA-017, ¶¶ 12, 15.

**{3}** We are persuaded that the concerns raised by the Court of Appeals warrant revisiting this Court's interpretation of legislative intent regarding New Mexico's DWI law. No motion of the vehicle is asserted in this case, either before or at the time the police officer approached Defendant. Had the police officer or other witnesses observed Defendant behind the steering wheel of a moving vehicle at or near the time of his apprehension, the State would not have to rely on "actual physical control" to prove that Defendant was DWI. It is only when there are no witnesses to the vehicle's motion that actual physical control is essential to prove DWI at the time an accused is apprehended. Therefore, our interpretation strictly concerns the legislative intent of the phrase "actual physical control." Mindful that the Legislature itself removed the phrase "actual physical control" from the DWI statute, and that the statute nonetheless relates to *driving* while intoxicated, we do not believe that the Legislature intended to forbid intoxicated individuals from merely entering their vehicles as passive occupants or using their vehicles for temporary shelter. The purpose of our DWI legislation is "to protect the health, safety, and welfare of the people of New Mexico" from "the risk of harm posed by intoxicated *drivers*." *Johnson*, 2001-NMSC-001, ¶¶ 6, 17 (emphasis added).

**{4}** As will be explained in detail later in this opinion, a fact finder cannot simply assume or speculate that the individual in question might sometime in the future commence driving his or her vehicle. Instead, the fact finder must assess the totality of the circumstances and find that (1) the defendant was actually, not just potentially, exercising control over the vehicle, and (2) the defendant had the general intent to drive so as to pose a real danger to himself, herself, or the public. In this case, the State failed to prove that Defendant used the vehicle other than as a passive occupant. It was pure speculation whether Defendant would rouse himself and drive the vehicle. Defendant could not be convicted for what he *might* have done. The State had to prove beyond a reasonable doubt that Defendant actually exercised physical control over the vehicle with the general intent to drive so as to endanger

the public. Having failed to meet its burden, the State did not establish actual physical control. Therefore, Defendant's plea is set aside and the charge is dismissed.

## I. BACKGROUND

**{5}** In December 2004, Defendant was charged in metropolitan court with one count of aggravated DWI, first offense, contrary to Section 66-8-102. Defendant entered into a conditional plea agreement after the metropolitan court judge found that Defendant could have put the vehicle in motion had he roused himself, and therefore was in actual physical control of the vehicle. On appeal to the district court, the dispositive issue was whether Defendant could have roused himself and "put the vehicle in motion and operated it with less than a safe and steady hand." The district court affirmed the metropolitan court, finding that "[w]hether the car's engine was running or not, whether the keys were in the ignition or not, whether [Defendant] was conscious or not, does not matter. [Defendant] had physical control of the car: he was in the driver's seat and the keys were within his reach." Therefore, the district court found that Defendant "could have directly started the car."

**{6}** The Court of Appeals affirmed, holding that "the legislative intent behind Section 66-8-102 is best served by deterring an intoxicated person from putting himself behind the wheel of a car when he has immediate access to the ignition key of the vehicle." *Sims*, 2008-NMCA-017, ¶ 10. The Court of Appeals relied primarily on our discussion in *Johnson* concerning the legislative purpose behind Section 66-8-102, which is to "deter persons from placing themselves in a situation in which they can directly commence operating a vehicle while they are intoxicated." *Sims*, 2008-NMCA-017, ¶ 8 (internal quotation marks and citation omitted). The Court also stated that no "coherent rationale" could distinguish between circumstances where the keys are in the ignition or "millimeters away" on the seat. *Id.* ¶ 11. However, the Court of Appeals majority opinion expressed concern with *Johnson* and urged this Court to "take another look at what constitutes driving while intoxicated." *Id.* ¶ 12. In particular, the Court of Appeals expressed "concerns [that] conduct of this nature ris[es] to the level of DWI[.]" *Id.* ¶ 11. The dissent also urged this Court to reconsider our holding in *Johnson* and to reverse Defendant's conviction. *Id.* ¶ 15 (Sutin, C.J., dissenting). We granted Defendant's petition for writ of certiorari, *State v. Sims*, 2008-NMCERT-001, 143 N.M. 399, 176 P.3d 1131, and reverse.

## II. DISCUSSION

### A. DWI Statute and Jurisprudence

**{7}** The New Mexico Motor Vehicle Code provides that "[i]t is unlawful for a person who is under the influence of intoxicating liquor to drive a vehicle within this state." Section 66-8-102(A). Prior to 1953, the Legislature had limited the statutory proscription to driving a vehicle while under the influence, which is similar to the way the statute now reads. NMSA 1941, § 68-502 (1929, prior to 1953 amendment). In 1953, however, the Legislature changed the wording to make it unlawful "for any person who is under the influence of

intoxicating liquor to drive or be in *actual physical control* of any vehicle within this State." 1953 N.M. Laws, ch. 139, § 54 (emphasis added). At the same time, the Legislature statutorily defined "driver" for the first time to mean "[e]very person who drives or is in *actual physical control* of a vehicle." 1953 N.M. Laws, ch. 139, § 11 (emphasis added). After these amendments, the substantive statute and the definition remained unchanged until 1978.

{8}    In 1978, the Legislature amended the definition of "driver," changing "vehicle" to "motor vehicle" and appending the phrase "including a motor-driven cycle, upon a highway or who is exercising control over, or steering, a vehicle being towed by a motor vehicle." 1978 N.M. Laws, ch. 35, § 4(17) (codified as amended at NMSA 1978, § 66-1-4.4(k) (1990, as amended through 2007)). The Legislature did not make similar changes to any other sections of the Motor Vehicle Code.

{9}    In 1979, the Legislature struck the "actual physical control" language from each of the substantive Motor Vehicle Code sections relating to DWI, but retained it in the "driver" definition. *See* 1979 N.M. Laws, ch. 71, §§ 1, 7, 8, 11 (retaining "actual physical control" in Section 66-1-4.4(K) and deleting the phrase from Sections 66-8-102, -107, and -112, respectively). The term "driver" appears in numerous locations throughout the Motor Vehicle Code and the definition applies universally. *See* NMSA 1978, § 66-1-4 (1978, as amended through 1991) (stating that the definition sections "define terms for general purposes of the Motor Vehicle Code"). As a result of these changes, the Legislature made the substantive DWI provision inconsistent with the "driver" definition in two ways: (1) the DWI section referred to "vehicle" rather than "motor vehicle"; and (2) it no longer used "actual physical control," whereas the "driver" definition still did. One possible interpretation of this across-the-board omission from the substantive provisions is that the Legislature intended to return to the pre-1953 DWI provision when "actual physical control" was not an element of the DWI crime and only driving while intoxicated was proscribed.

{10}   In 1986, however, this Court interpreted these cumulative changes to convey the Legislature's intent not to sever the "driver" definition from the substantive DWI section, or as a substantive change to return to the language of the pre-1953 provision, but to "streamline and clarify" the Motor Vehicle Code. *Boone v. State*, 105 N.M. 223, 225, 731 P.2d 366, 368 (1986). Finding as a matter of law that the term "drive" was "unclear," the *Boone* Court turned to statutory construction to resolve the ambiguity. *Id.* Rather than interpret the 1979 omission of "or be in actual physical control of" from the DWI section as evidence that the Legislature intended to narrow the scope of the statutory offense, this Court found that the intent was to make the DWI section consistent with the Motor Vehicle Code's recently revised definition of "driver." *Id.* at 225-26, 731 P.2d at 368-69.

> In 1978, the Motor Vehicle Code was rewritten substantially, and the definition of "driver" was amended to encompass "every person who drives or is in actual physical control of a motor vehicle . . . or who is exercising control over, or steering, a vehicle being towed by a motor vehicle." The

3

new definition was inconsistent with the unchanged DWI section in its references to *motor* vehicles but not in its use of the phrase "drives or is in actual physical control of."

*Id.* at 225, 731 P.2d at 368 (citation omitted).

**{11}** The *Boone* Court determined that the Legislature intended that the definition of "driver" and the DWI section must be consistent, and that the Legislature had two options in 1979 to reconcile them as a result of the 1978 changes. "The Legislature could have conformed Section 66-8-102 to the definition by adding the appropriate references to motor vehicles and towed vehicles. Instead it chose to streamline and clarify the DWI section by using only the statutorily defined term, 'drives.'" *Id.* The *Boone* Court, as Chief Justice Minzner noted in her dissent in *Johnson*, applied the definition of the term "drives" coextensively with the term "driver," because the Motor Vehicle Code does not actually define the term "drives." 2001-NMSC-001, ¶¶ 34-36 (Minzner, C.J., and Franchini, J., dissenting). The *Boone* majority cited a Pennsylvania case, *Commonwealth v. Kloch*, 327 A.2d 375, 383 (Pa. Super. Ct. 1974) (using "operator" and "operation" to apply to verb "operate")), for the interpretive approach equating "drive" with "driver."[1] *Boone*, 105 N.M. at 225, 731 P.2d at 368.

**{12}** Using this method of construction, the *Boone* Court determined that the amendments to the DWI section and the Motor Vehicle Code intended

> to make clear that the Legislature's definition of "driver" applies to the offense of DWI. We therefore hold that Section 66-8-102 makes it unlawful for any person who is under the influence of intoxicating liquor to drive or be in actual physical control of a motor vehicle or to exercise control over or steer a vehicle being towed by a motor vehicle; motion of the vehicle is not a necessary element of the offense.

*Id.* at 226, 731 P.2d at 369. According to this interpretation, the Legislature's purpose was to keep the "actual physical control" language in the substantive DWI provisions, because the "driver" definition was meant to apply to every substantive provision using the word "drive." Therefore, it was unnecessary for the Legislature to restate in every relevant DWI provision "or be in actual physical control" because the phrase was automatically

---

[1]The Pennsylvania court was careful to limit "actual physical control" in a way that *Boone* did not by stating that "[a] driver has 'actual physical control' of his car when he has real (*not hypothetical*), bodily restraining or directing influence over, or domination and regulation of, its movements of machinery." *Commonwealth v. Kloch*, 327 A.2d 375, 383 (Pa. Super. Ct. 1974) (citation omitted) (emphasis added).

incorporated by reference to the "driver" definition.[2]

### B. *Boone* Was Intended to Allow Prosecution for Past DWI, but It Has Been Misinterpreted to Allow Prosecution for Future DWI

**{13}** It is important to understand that the *Boone* Court's rationale went beyond merely seeking to reconcile the "driver" definition with an ambiguous DWI provision. Rather, the driving force behind this Court's holding in *Boone* was a disinclination to alter the common law rule prohibiting warrantless misdemeanor arrests when the misdemeanor does not occur in the presence of the arresting officer. 105 N.M. at 226, 731 P.2d at 369.

**{14}** *Boone* presented the problem of an obviously intoxicated individual in a vehicle that was not moving at the time the arresting officer arrived at the scene. The defendant's car was stopped with its lights off and the engine running in the middle of the street. *Id.* at 224, 731 P.2d at 367. The investigating officer noted that the defendant, who was sitting in the driver's seat, smelled of alcohol, slurred his speech, walked unsteadily, and failed all but one of the field sobriety tests administered. *State v. Boone*, No. 8093, slip op. at 1-2 (N.M. Ct. App. Sept. 12, 1985). The trial court found that Section 66-8-102 "requires that the vehicle be placed in motion," and therefore that the arresting officer "had no probable cause to believe that the offense of driving while under the influence was being committed in his presence." *Id.* at 2.

**{15}** The impediment for the trial court was the common law rule that a police officer cannot make a valid warrantless arrest for a misdemeanor driving while under the influence charge when the officer did not himself see the vehicle in motion. *See id.* at 1; *see also State v. Luna*, 93 N.M. 773, 777, 606 P.2d 183, 187 (1980) ("A warrantless arrest of a person for violation of a misdemeanor is valid only if the offense occurred in the arresting officer's presence."). The Court of Appeals did not find a violation of the misdemeanor arrest rule because "the circumstantial evidence in this case would permit a reasonable inference that

---

[2]The *Boone* Court's importation of the "driver" definition and its other terms into the substantive DWI sections created several inconsistencies. Already litigated and decided by this Court in *Johnson* is the geographical distinction between public and private land seemingly created by the definition's phrase "upon a highway." *Johnson*, 2001-NMSC-001, ¶ 13 (internal quotation marks omitted). We now address "actual physical control" for the first time. Yet to be litigated is the distinction between "vehicle" and "motor vehicle." The *Boone* holding seems to constrain the DWI statute to "motor vehicle" as used by the "driver" definition, notwithstanding the Legislature's express preference for the broader term "vehicle" in the substantive DWI provision. 105 N.M. at 225, 731 P.2d at 368. It appears that this confusion between "motor vehicle" and "vehicle" has been imported into our jury instructions, as well, contrary to express statutory language. *See* UJI 14-4501 NMRA (providing that "the state must prove to your satisfaction beyond a reasonable doubt [that t]he defendant operated a *motor vehicle*" (emphasis added)).

defendant committed the misdemeanor offense of DWI 'in the presence' of the arresting officer." *State v. Boone*, No. 8093, slip op. at 1. As the Court of Appeals reasoned, "[i]t would defy common sense to require the officer to leave defendant's car parked in the traffic lane while the officer went to a magistrate for an arrest warrant, thereby endangering not only the lives of the traveling public, but also the occupants of defendant's car." *Id.* at 4. Therefore, the Court of Appeals held that "when the officer's own observations, together with the reasonable inferences which may be legitimately drawn from the circumstantial evidence, give probable cause to believe, or reasonable grounds to suspect, that a person under the influence was driving the vehicle, a warrantless arrest may be made." *Id.* The Court of Appeals determined in *Boone* that the defendant's car, stopped in the middle of the roadway with its lights out and motor running and with the defendant in the driver's seat, "coupled with defendant's slurred speech and the smell of alcohol . . . justif[ied] a finding that the officer had reasonable cause to believe, or reasonable grounds to suspect, that the offense of DWI was being committed in his presence by the defendant." *Id.* To hold otherwise "would mean the officer could not draw reasonable inferences from the plain facts, thus leading to absurd results." *Id.* at 4-5.

**{16}**    This Court, however, determined that the Court of Appeals erred by assuming that motion of a vehicle is required to violate the DWI statute and by expanding the "meaning of the requirement that the offense be committed 'in the presence of' the officer[, which was] unnecessary to the determination of this case[.]" *Boone*, 105 N.M. at 226, 731 P.2d at 369. This Court held that motion of a vehicle is unnecessary because "actual physical control" is all that is needed to violate the statute. *Id.* Given this interpretation, "the trial court had before it evidence upon which it could have found that the offense of DWI literally occurred in the arresting officer's presence[,]" if the trial court could find on remand that the defendant was in "actual physical control" of the vehicle. *Id.*

**{17}**    *Boone*'s purpose, therefore, was to create a judicial mechanism for prosecuting intoxicated drivers who had obviously been driving but no longer had the car in motion when in a police officer's presence. In other words, *Boone* used actual physical control to allow for a conviction of *past* DWI based on the continued control of the vehicle at the time of a police officer's arrival on the scene. However, the use of "actual physical control" by this Court in *Boone* has been interpreted to support the prosecution of an intoxicated person for DWI because he or she might drive in the future while still intoxicated. It is this latter interpretation that concerns us in this case.

**{18}**    The facts of this case implicate only the latter interpretation of actual physical control, which has been developed in subsequent decisions by this Court and the Court of Appeals, culminating in the expansive definition applied by the lower courts in this case. We now review those prior decisions to understand their holdings in light of *Boone* so that we can ensure our jurisprudence continues to adhere to legislative intent.

## C.    Development of Actual Physical Control After *Boone*

**{19}** Following *Boone*, this Court did not address "actual physical control" again until *Johnson*, 2001-NMSC-001. At issue in *Johnson* was "whether the State can charge a defendant with DWI pursuant to NMSA 1978, § 66-8-102 (1997, prior to 1999 amendment) when the defendant is on private property and in actual physical control of a non-moving vehicle." *Id.* ¶ 1. Neither of the consolidated cases in *Johnson*, however, turned on the meaning of "actual physical control." *Id.* ¶ 19 ("Respondents do not challenge the finding that they were in actual physical control of their vehicles when they were arrested for DWI[.]"). The Court's review was limited to "whether the Legislature intended to place a geographical limitation on the offense of DWI depending on the type of activity constituting the 'driving' of a vehicle." *Id.* ¶ 5. That is, while the "driving" prohibition applies on both public and private property, *id.* ¶ 9, this Court sought to determine whether being in "actual physical control" also applied on private as well as public property. *Id.* In holding that "actual physical control" also applied on private property, *Johnson* "reject[ed] any public/private property distinction with respect to the offense of DWI." *Id.* ¶ 1. Notwithstanding the limited scope of the issue before it, this Court went further to "define 'actual physical control[.]'" *Id.* ¶ 19.

**{20}** We stated that "a person is in actual physical control over a vehicle when he or she exercises direct influence over the vehicle." *Id.* "[T]he clear purpose of the 'actual physical control' element of the DWI statute is to deter persons from placing themselves in a situation in which they can directly commence operating a vehicle while they are intoxicated, regardless of the location of the vehicle." *Id.* In discussing actual physical control, we strayed into dicta by addressing an issue that was not squarely before us, was not challenged by the parties, and was not necessary for decision in the case. *Kent Nowlin Constr. Co. v. Gutierrez*, 99 N.M. 389, 390-91, 658 P.2d 1116, 1117-18 (1982) (holding that dicta is language unnecessary to the decision of the issues before the court and is not binding as a rule of law). This broadly worded dicta led to Defendant's conviction in this case based on very little evidence to show actual physical control of his vehicle.

**{21}** In reaching our decision in *Johnson*, we relied on a series of Court of Appeals opinions developing this nascent jurisprudence stemming directly from *Boone*, most important among them being *State v. Harrison*, 115 N.M. 73, 846 P.2d 1082 (Ct. App. 1992), as well as an out-of-state case with a different DWI provision. *Johnson*, 2001-NMSC-001, ¶ 19 (citing *City of Cincinnati v. Kelley*, 351 N.E.2d 85, 87 (Ohio 1976) ("The clear purpose of the control aspect of the instant ordinance is to deter persons from being found under circumstances in which they can directly commence operating a vehicle while they are under the influence of alcohol or particular drugs.")). In *Harrison*, the defendant was a passenger in his own vehicle until it stalled and would not restart. 115 N.M. at 74, 846 P.2d at 1083. The driver steered the vehicle toward the curb and left in search of help. *Id.* at 74-75, 846 P.2d at 1083-84. Concerned that the defendant would attempt to drive while intoxicated, the driver took the keys from the ignition, placed them under the seat, positioned bricks before the front and back tires of the vehicle on the driver's side, and instructed the defendant not to leave the vehicle. *Id.* Some time later, police officers investigated and found the defendant "passed out behind the steering wheel of the car" with the key in the

ignition, the ignition turned on, the transmission in drive, and with the defendant's foot on the brake and hands on the steering wheel. *Id.* at 75, 846 P.2d at 1084. The officers noted that the defendant had slurred speech, red blood-shot eyes, and smelled of alcohol. *Id.* The defendant refused field sobriety tests, but after being transported to the Bernalillo County Detention Center he submitted to a breath-alcohol test that produced readings of .17 and .15, well in excess of the legal limit. *Id.*; § 66-8-102(C).

**{22}** Based on these facts, the Court of Appeals held that "[i]t can reasonably be inferred that Defendant actively searched for the vehicle keys, started the engine, and was prepared to drive away before he passed out or fell asleep." *Harrison*, 115 N.M. at 76, 846 P.2d at 1085. The Court of Appeals affirmed the defendant's conviction, holding that "a defendant may exercise 'actual physical control' over a vehicle when he is discovered behind the wheel of an automobile, either passed out or asleep, *under these circumstances*." *Id.* (emphasis added). That is, the circumstantial evidence supported a finding that the defendant exerted actual, not hypothetical, physical control over the vehicle because he turned on the vehicle's engine, placed its transmission in the drive position, and applied his foot to the vehicle's brake.

**{23}** The *Harrison* Court further held that under *Boone*, "[t]he fact that the officers discovered no signs that the vehicle had been moved by Defendant is irrelevant." *Harrison*, 115 N.M. at 76, 846 P.2d at 1085. The Court of Appeals also determined for the first time in *Harrison* that DWI is a strict liability crime because the statute "makes absolutely no reference whatsoever to a required intent on the part of an accused." *Id.* at 77, 846 P.2d at 1086. Based on the strict liability nature of the crime and on previous interpretations of the legislative policy behind the DWI legislation, *Harrison* made strong statements about the public policy supporting the Court's interpretation of the statute. *See id.* ("the public's interest in deterring individuals from driving while intoxicated is compelling"; "the policy behind the DWI statute is to prevent individuals from driving or exercising actual physical control over a vehicle when they . . . are unable to exercise the clear judgment and steady hand necessary to handle a vehicle with safety both to themselves and the public"); *see also Johnson*, 2001-NMSC-001, ¶ 17 ("[T]he public interest and potential harm posed by intoxicated drivers is so compelling that the offense of DWI is a strict liability crime."). The *Harrison* Court was particularly concerned with a defendant who argued that "he could not be convicted of DWI because he was too intoxicated to form the conscious intent to drive drunk." 115 N.M. at 78, 846 P.2d at 1087. As the Court in *Harrison* reasoned in support of its strict liability determination, "[t]o allow persons charged with DWI the opportunity to present such a defense would be absurd and undoubtedly contrary to the statute's purpose." *Id.*

## D. Actual Physical Control Requires Proof of a General Intent to Drive

**{24}** We agree with *Harrison* and reaffirm that the DWI provision proscribing driving while intoxicated is a strict liability crime and requires no mens rea for conviction when the accused, while intoxicated, is observed behind the steering wheel of a moving vehicle.

8

However, the facts of this case persuade us that when a DWI charge is based on evidence of "actual physical control," evidence of intent is also necessary to support a conviction. The threat, if any, that was posed by Defendant as he lay passed out or asleep in his vehicle was far short of that posed by an intoxicated individual who is *driving*. While Defendant arguably exercised some level of control over the vehicle, given his location in the driver's seat and the proximity of his keys, there was no indication that he posed any actual, as opposed to hypothetical, threat to the public.

**{25}**     In fact, an intoxicated individual may exercise a great deal of control over a vehicle, yet still pose little danger to himself, herself, or the public. For example, on a cold night, an intoxicated person may use his vehicle as a temporary shelter—as a place to sleep it off—even going so far as to start the engine so that he can turn on the heater. Such an individual, while clearly in control of his vehicle, does not pose a threat to himself, herself, or the public precisely because he has decided *not* to drive. The individual's recognition that he is too intoxicated to drive embodies the aim of our DWI law and its enforcement. To subject this type of behavior to strict liability would be counterproductive.

**{26}**     It is not until an intoxicated individual in actual physical control of a vehicle forms the intent to drive that he becomes a danger. At that moment he ceases to be merely a passive occupant of the vehicle—he becomes a threat to public safety and is therefore culpable under the DWI law. We therefore hold that a DWI conviction that is based on actual physical control requires proof that the accused actually exercised control over the vehicle, as well as proof of a general intent to drive, so as to pose a real danger to the safety of the driver or the public.[3] It is no longer sufficient to introduce evidence that shows that the accused "can directly commence operating a vehicle while . . . intoxicated." *Johnson*, 2001-NMSC-001, ¶ 19.

**{27}**     We recognize that interpreting actual physical control to require proof of intent makes it analytically similar to an attempt crime. *See* NMSA 1978, § 30-28-1 (1963) (requiring "an overt act in furtherance of and with intent to commit" the crime); *cf. Johnson*, 2001-NMSC-001, ¶ 19 (equating "actual physical control" with being "in a situation in which [drivers] can directly commence operating a vehicle while they are intoxicated"); *Atkinson v. State*, 627 A.2d 1019, 1025 (Md. 1993) (noting that the view among many states is that the purpose of the "actual physical control" language in DWI provisions is preventive, aimed to protect the public from what inebriated individuals "might" do (internal quotation marks and citation omitted)). We note that the Legislature has intended that "[n]o person shall be sentenced for an attempt to commit a misdemeanor." Section 30-28-1. This is true in general, unless a specific statute provides otherwise. *See City of Albuquerque v. Chavez*,

---

[3]"New Mexico courts have . . . allow[ed] voluntary intoxication as a consideration only for specific-intent crimes[.] Under this approach, evidence of voluntary intoxication is not admissible for what are referred to as general-intent crimes." *State v. Brown*, 1996-NMSC-073, ¶ 22, 122 N.M. 724, 931 P.2d 69 (citations omitted).

9

91 N.M. 559, 560, 577 P.2d 457, 458 (Ct. App. 1978) (holding that Section 30-28-1 is "inapplicable if another statute authorizes the alleged attempted misdemeanor"). Insofar as we believe that the Legislature equated proof of actual physical control with proof of driving, Section 66-8-102 authorizes prosecution for attempted DWI. Thus, when the prosecution relies on actual physical control to prove DWI, the prosecution must prove an overt act sufficient to establish actual physical control of the vehicle along with the general intent to drive. *See* § 30-28-1.

**E.      Policy and Legislative Intent Support Limiting *Boone* and *Johnson***

**{28}**      At the time the New Mexico Supreme Court filed its opinion in *Boone*, overruling the Court of Appeals by a narrow 3-2 margin, its holding was recognized as problematic. Justice Walters wrote a dissent, arguing that the "majority opinion goes too far." *Boone*, 105 N.M. at 228, 731 P.2d at 371 (Walters, J., and Sosa, J., dissenting). Foreshadowing what was to come, Justice Walters was concerned that "[t]he rationale of the majority opinion would apply as easily to anyone sitting in a parked car in front of his own house or in front of any establishment, if the arresting officer smelled alcohol and observed slurred speech." *Id.* In addition to raising concerns that such conduct is not clearly proscribed by the express language of the DWI statute, Justice Walters criticized the opinion for the "convoluted rationale" behind importing the definition of "driver" into the DWI law. *Id.* Similarly, Chief Justice Minzner and Justice Franchini joined in a forceful dissent to *Johnson*, raising "concerns about whether *Boone* was correctly decided." *Johnson*, 2001-NMSC-001, ¶ 34 (Minzner, C.J., and Franchini, J., dissenting). Chief Justice Minzner found the *Boone* Court's "logic . . . unclear." *Id.* ¶ 36.

> To conclude that the term "drives" is coextensive with the statutory definition of "driver" and thus includes all situations where a driver is in actual physical control of a vehicle seems to me to require something more than the statutory analysis we performed in *Boone*. Perhaps we should never have equated the two terms and instead should have restricted our remarks to stating that the seriousness of the DWI problem in our state justified equating the two terms, but that such a task "requires legislative therapy, not judicial surgery."

*Id.* (citation omitted). Similarly, the Court of Appeals, in deciding this very case, voiced concern over *Johnson*'s broad language that is rooted in *Boone*: "Were we to analyze this case on a clean slate, we would reverse based on the reasoning set forth in the dissent written by Justice Minzner in *Johnson*." *Sims*, 2008-NMCA-017, ¶ 12 (citations omitted). Resurrecting concerns from earlier dissents, the Court of Appeals majority and dissenting opinions in *Sims* both urged this Court "to take another look at what constitutes driving while intoxicated." *Id.* ¶¶ 12, 15.

**{29}**      While we agree that elements of *Boone* and *Johnson* go too far, we adhere to our understanding that "[t]he  purpose of our DWI legislation is to protect the public from the

risk of harm posed by intoxicated drivers[,]" *Johnson*, 2001-NMSC-001, ¶ 17, and "to protect the health, safety, and welfare of the people of New Mexico." *Id.* ¶ 6.

> The policy underlying the DWI statute is to "prevent individuals from driving or exercising actual physical control over a vehicle when they, either mentally or physically, or both, are unable to exercise the clear judgment and steady hand necessary to handle a vehicle with safety both to themselves and the public."

*Id.* ¶ 17 (citation omitted). As we confirmed in *Johnson*, "the legislature recognized this significant public interest and potential harm when it drafted Section 66-8-102" and made "the *act of driving* while intoxicated a crime, in and of itself, regardless of the intent of the accused." *Harrison*, 115 N.M. at 77, 78, 846 P.2d at 1086, 1087; *accord Johnson*, 2001-NMSC-001, ¶ 17 (affirming DWI is a strict liability crime). However, we also recognize that extending DWI liability to an individual who gets behind the wheel in the parking lot of a public restaurant or bar only to "realize that he or she is too intoxicated to drive . . . despite the fact that this decision not to drive is a preferable outcome to having the intoxicated person put the car in motion" is not clearly supported by the Legislature. *See State v. Wenger*, 1999-NMCA-092, ¶ 17, 127 N.M. 625, 985 P.2d 1205, *reversed by Johnson*, 2001-NMSC-001, ¶ 24. Creating this sort of liability could provoke an unscrupulous driver to take his or her chances on the road, rather than sleeping it off in the car, because it is possible to be arrested for DWI despite having formed the conscious intent *not* to drive. The many public service announcements regarding DWI suggest that the public has become more aware of the need for designated drivers or, in the absence of designated drivers, to keep from driving their vehicles while intoxicated.

**{30}** In *Johnson*, we held that the "clear purpose of the 'actual physical control' element of the DWI statute is to deter persons from placing themselves in a situation in which they can directly commence operating a vehicle while they are intoxicated[.]" 2001-NMSC-001, ¶ 19. That language, however, was borrowed almost directly from an Ohio case reviewing a city ordinance that expressly prohibited actual physical control of a vehicle while intoxicated. *Id.* (citing *Kelley*, 351 N.E.2d at 86 ("'No person who is under the influence of alcohol or a drug of abuse . . . shall operate or be in actual physical control of any vehicle within this city.'" (citation omitted))). *Kelley* held that the purpose of the actual physical control element of the city ordinance in question was "to deter persons from being found under circumstances in which they can directly commence operating a vehicle while they are under the influence of alcohol or particular drugs." 351 N.E.2d at 87.

**{31}** Consequently, we agree that the dicta in *Johnson* identifying the purpose of actual physical control as "deter[ring] persons from placing themselves in a situation in which they can directly commence operating a vehicle while they are intoxicated" was overly broad. 2001-NMSC-001, ¶ 19. The facts of this case exemplify how this language could be misinterpreted to allow a conviction for conduct the Legislature did not intend to proscribe. Otherwise, rather than driving while intoxicated, it would be parked while intoxicated. We

11

are confident that the intent element will align actual physical control with the legislative intent identified in *Boone* and *Johnson*.

**{32}** To the extent that our prior decisions in *Johnson* and *Boone* conflict with our holding today, we limit those holdings in accord with this opinion. While we recognize that the statutory construction employed in *Boone* remains questionable, we note that since *Boone* was decided, at least two other jurisdictions have adopted an identical approach with their respective DWI legislation, incorporating "actual physical control" from the statutory definition for "driver" into the substantive provision delimiting "drive." That other jurisdictions with similar DWI provisions have relied on the same logic and approach as this Court buttresses the essential holding and rationale employed in *Boone*.

**F.      Proving Actual Physical Control**

**{33}** In reviewing approaches taken by other jurisdictions with respect to establishing actual physical control of a vehicle, we find portions of the recently recommended Arizona jury instruction particularly helpful and persuasive. Arizona's recommended instruction directs jurors to consider "the totality of the circumstances shown by the evidence" and suggests a list of non-exhaustive factors that can be employed to determine whether a defendant had actual physical control and posed a real danger to himself or others. *State v. Zaragoza*, 209 P.3d 629, 634 (Ariz. 2009) (en banc). We believe these non-exhaustive factors would be useful for a New Mexico fact finder to determine whether an individual is in actual physical control of a vehicle and has the general intent to drive so as to pose a real danger to himself, herself, or the public. The factors are:

1. Whether the vehicle was running;

2. Whether the ignition was on;

3. Where the ignition key was located;

4. Where and in what position the driver was found in the vehicle;

5. Whether the person was awake or asleep;

6. Whether the vehicle's headlights were on;

7. Where the vehicle was stopped;

8. Whether the driver had voluntarily pulled off the road;

9. Time of day;

10. Weather conditions;

12

11. Whether the heater or air conditioner was on;

12. Whether the windows were up or down;

13. Any explanation of the circumstances shown by the evidence.

*Id.*; *see also* Revised Arizona Jury Instruction ("RAJI") (Standard Criminal) 28.1381(A)(1) (DUI) (3d ed. 2008). Arizona also instructs jurors that "[i]t is up to [them] to examine all the available evidence in its totality and weigh its credibility in determining whether the defendant was simply using the vehicle as a stationery [sic] shelter[.]" *Zaragoza*, 209 P.3d at 633 (citing RAJI (Standard Criminal) 28.1381(A)(1) (DUI) (3d ed. 2008)). We agree with this additional factor when the prosecution relies on actual physical control to prove DWI.

**{34}** The clarification of our actual physical control jurisprudence that we introduce today is supported by the rationale and public policy underlying New Mexico's DWI law and legislative intent, which is to prevent people from driving while intoxicated and endangering themselves or the public. The prosecution must establish, based on the totality of the circumstances, that the accused was actually, not just potentially, exercising control over the vehicle with the general intent to drive so as to pose a real danger to himself, herself, or the public. If the Legislature intends otherwise, it is free to amend the statute to make clear its purpose.

**{35}** To understand how these factors might be applied to determine whether a driver is in actual physical control of a vehicle and has the general intent to drive so as to endanger the public, we review some precedent cases. The facts from *Harrison* implicate numerous factors in the analysis—the key was in the ignition, the ignition was on, and the driver was sitting behind the wheel of the vehicle in a traffic lane while he applied the brakes, thus demonstrating actual control of the vehicle. 115 N.M. at 75, 846 P.2d at 1084. The jury also would have to determine whether these same facts evidenced the defendant's intent to drive so as to endanger the public. That the vehicle was on a roadway arguably increases the danger posed to both the defendant and the public and supports an inference of the general intent to drive. The facts in *Boone* are similar in this regard. The defendant's vehicle was in the middle of a traffic lane and the motor was running, but the lights were turned off. *Boone*, 105 N.M. at 226-27, 731 P.2d at 369-70. Most importantly, there are no facts in either case that indicate that the defendants were passive occupants or had been using their vehicles as stationary shelters.

**{36}** In *State v. Rivera*, 1997-NMCA-102, ¶ 2, 124 N.M. 211, 947 P.2d 168, the defendant "was found either unconscious or asleep at the wheel of his car in the front yard of his house; the car's engine racing." While the Court of Appeals determined that *Rivera* was similar to *Harrison* and so upheld the conviction, *id.* ¶ 3, the recitation of the facts does not make clear what time of day the defendant was apprehended; whether the transmission was in drive; whether he intended to drive or was in his vehicle for the sole purpose of listening to the

13

radio, as his wife contended; or why or how the vehicle came to rest in his front yard. It is possible that, given our clarification of the meaning of actual physical control in this case, the answers to these questions may have mandated a different outcome on appeal if the fact finder could not conclude beyond a reasonable doubt that the defendant was anything other than a passive occupant who did not intend to drive. We note that unlike *Boone*, the defendant in *Rivera* was not stopped in the middle of a roadway, where it is unlikely an individual would choose to use a vehicle as a place of shelter while intoxicated. The public endangerment factor is also not as clearly implicated when a vehicle is lawfully parked in a front yard.

**{37}**     The facts of the consolidated cases we reviewed in *Johnson* also pose some challenges under the more demanding totality test we introduce today. The defendant in *Wenger* was found in the driver's seat of his vehicle, with the keys in the ignition but the engine off, parked off the roadway on private property. 1999-NMCA-092, ¶ 2, *reversed by Johnson*, 2001-NMSC-001, ¶¶ 4, 24. While there was evidence that the defendant actually had been driving, the Court of Appeals determined that the State did not preserve the argument that there was "evidentiary support for an inference that Defendant was driving while intoxicated[,]" and so affirmed the conviction based only on evidence of actual physical control. *Wenger*, 1999-NMCA-092, ¶¶ 4, 18. It is unlikely that evidence of an intoxicated individual sitting in his or her lawfully parked vehicle with the keys in the ignition, but the ignition off, and nothing more, would be sufficient to establish actual physical control under the more narrow test we introduce today. What facts would have been sufficient to find actual physical control, however, were not at issue in *Wenger*. The sole question in *Wenger* and *Johnson*, its companion case, was whether the crime of actual physical control applied on private as well as public property because the defendants did not challenge the finding of actual physical control. *Johnson*, 2001-NMSC-001, ¶ 1. The facts in *Johnson*, to the extent they were developed at all, also appear to be insufficient under the new totality test to indicate that control was actual, and not potential or hypothetical. The defendant in *Johnson* was parked in a motel parking lot with the vehicle's engine running, the key in the ignition, and a large pool of condensation under the exhaust pipe, "indicating that the car had possibly been at the location for three hours." *Id.* ¶ 3. On these facts alone, it is not clear whether the defendant was using his vehicle for anything other than a shelter, or how either defendant was endangering himself or the public.

**{38}**     It is evident from a brief review of these cases that the totality of the circumstances test we adopt today increases the evidentiary burden on the State relative to the dicta in *Johnson*. *See id.* ¶ 19 (stating that the purpose of actual physical control is to "deter persons from placing themselves in a situation in which they can directly commence operating a vehicle while they are intoxicated"). More care will be required of investigating officers and prosecutors to establish facts tending to prove that defendants actually used their vehicles with the general intent to drive and posed a real danger to themselves or the public. Facts that suggest what the defendants might do or the ease with which the defendants could commence driving are now insufficient to establish actual physical control. A totality of the circumstances test must prove what defendants have done and what they intend to do, not

14

merely what they might do. A finding that "there [is] nothing to prevent [the d]efendant from . . . driving" is now inadequate. *Sims*, 2008-NMCA-017, ¶ 9.

## III. CONCLUSION

**{39}** For the foregoing reasons, we reverse the Court of Appeals, set aside Defendant's plea, and dismiss the charges.

**{40}** **IT IS SO ORDERED.**

_____
**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**RICHARD C. BOSSON, Justice**

**Topic Index for *State v. Sims*, Docket No. 30,827**

| | |
|---|---|
| **CL** | **CRIMINAL LAW** |
| CL-DG | Driving While Intoxicated |
| CL-IX | Intoxication |
| CL-MH | Motor Vehicle Violations |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |
| ST-LI | Legislative Intent |
| ST-RC | Rules of Construction |