This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.                                              **No. 29,455**

**JOSHUA TSOSIE,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean, Jr., District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Acting Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

<strong>MEMORANDUM OPINION</strong>

**SUTIN, Judge.**

Convicted of driving while intoxicated (DWI), Defendant contends that the State failed to provide sufficient evidence that he was "in actual physical control" of the vehicle. We address that contention and need not address Defendant's other contention that failure to define "actual physical control" in the jury instructions was fundamental error.

During the time that this case was on direct appeal, the New Mexico Supreme Court issued two opinions directly affecting this case, *State v. Sims*, 2010-NMSC-027, 148 N.M. 330, 236 P.3d 642, and *State v. Mailman,* 2010-NMSC-036, 148 N.M. 702, 242 P.3d 269. We reverse Defendant's conviction and remand the case for trial consistent with *Sims* and *Mailman*.

**BACKGROUND**

Defendant was arrested for DWI and charged pursuant to NMSA 1978, Section 66-8-102 (2008) (amended 2010). Lieutenant Vince Mitchell of the Farmington Police Department testified that he was dispatched to Apache Y convenience store after a clerk called to report a possible drunk driver who had attempted to purchase liquor at the store. The clerk described the car and its license plate number. Lieutenant Mitchell received a second dispatch call reporting that the car was headed eastbound from the convenience store. Lieutenant Mitchell drove to Apache Y and discovered the car matching the clerk's description and license plate number in the

driveway of Apache Mini-Storage located some fifty to seventy-five yards from Apache Y.

Lieutenant Mitchell testified that it took him at most five minutes from the time he received the dispatch call until he located the vehicle. As Lieutenant Mitchell approached the car, he observed that the headlights and taillights of the car were on but then turned off as he got closer. He observed Defendant seated in the driver's seat of the car and another individual, Paul Gould, seated in the passenger seat holding the car keys. The officer smelled a strong odor of alcohol coming from the vehicle and observed a can of beer lying in the driver's side floorboard. Defendant's eyes were bloodshot, and Defendant was having difficulty maintaining his balance. Based on his observations and Defendant's poor performance on the field sobriety tests, Lieutenant Mitchell arrested Defendant for DWI. A breath test given to Defendant at the police station resulted in readings of .16 and .15 grams of alcohol per 210 liters of breath in two separate samples. Following the breath test, Defendant was charged with DWI.

Leon Begay, an employee of Apache Y, testified that he was at the store after midnight on the night of the incident. He was personally acquainted with Defendant and Mr. Gould, as the three were or had been roommates. Mr. Begay was off duty at the time of the incident but testified that he had asked the clerk on duty whether she

3

had seen Defendant or Mr. Gould. The clerk informed Mr. Begay that they had come in earlier attempting to purchase liquor, and she had refused the sale. The clerk also told Mr. Begay that Defendant and Mr. Gould were still sitting in the car in the Apache Y parking lot, and she was thinking about "call[ing] them in." Mr. Begay testified that he saw the car sitting outside of Apache Y, but he did not see the car leave or see who was driving at the time. In response to a question whether he had seen Defendant driving the car earlier that evening, Mr. Begay testified "they were driving" earlier and that Defendant "always wanted to drive with my other roommate's car."

The jury was instructed that in order to find Defendant guilty, the State must prove beyond a reasonable doubt that "[D]efendant operated a motor vehicle[.]" The jury was also instructed that a person is operating a motor vehicle if the person is "driving the motor vehicle[] or in actual physical control whether or not the vehicle is moving[.]" The jury returned a general verdict of guilty without being asked to specify which theory of operating a motor vehicle formed the basis for its verdict. This appeal followed.

**DISCUSSION**

**1.     Preservation Based on Alternative Theories of
         Actual Physical Control and Actual Driving**

4

The issue we address is whether Defendant's conviction must be reversed because of the possibility that it may have resulted from a legally inadequate alternative theory. This is an issue of law, and we review issues of law de novo. *See State v. Carrasco*, 2007-NMCA-152, ¶ 8, 143 N.M. 62, 172 P.3d 611 (reviewing for fundamental error, under a de novo review, the question of whether confusion led the jury to convict the defendant on a legally inadequate basis).

This appeal was held in abeyance until the New Mexico Supreme Court filed opinions in *Sims*, 2010-NMSC-027, and *Mailman*, 2010-NMSC-036. Because this case was on direct appeal at the time *Sims* and *Mailman* were decided, the *Sims* and *Mailman* decisions apply. *See Mailman*, 2010-NMSC-036, ¶ 9 ("We take this opportunity to clarify that our holding in *Sims* applies prospectively to all cases pending in the trial court and on direct appeal as of the date that *Sims* was filed, June 8, 2010.") We hold that, under *Sims* and *Mailman*, Defendant's conviction, to the extent it may have been based on actual physical control, must be overturned.

In *Sims*, the defendant was found intoxicated and sleeping in the driver's seat of his vehicle with the car keys on the passenger seat. *Sims*, 2010-NMSC-027, ¶ 1. The Supreme Court clarified that actual physical control requires not only control over the vehicle, but also a general intent to drive so as to endanger any person. *Id.* ¶¶ 20-21, 26. The Court stated that "a fact finder cannot simply assume or speculate that

the individual in question might sometime in the future commence driving his or her vehicle. Instead, the fact finder must assess the totality of the circumstances and find that (1) the defendant was actually, not just potentially, exercising control over the vehicle, and (2) the defendant had the general intent to drive so as to pose a real danger to himself, herself, or the public." *Id.* ¶ 4. Therefore, the Court held that "a DWI conviction that is based on actual physical control requires proof that the accused actually exercised control over the vehicle, as well as proof of a general intent to drive, so as to pose a real danger to the safety of the driver or the public. It is no longer sufficient to introduce evidence that shows that the accused can directly commence operating a vehicle while . . . intoxicated." *Id.* ¶ 26 (footnote omitted) (omission in original) (internal quotation marks and citation omitted). Because the prosecution failed to prove the defendant's intent to drive so as to endanger himself or the public, as well as the defendant's actual physical control, the Court overturned the DWI conviction and dismissed the charge. *Id.* ¶ 4.

Similarly, in *Mailman*, a police officer observed the defendant in the driver's seat of a vehicle parked in a convenience store parking lot. 2010-NMSC-036, ¶ 2. The officer observed an open can of beer on the center console, and the defendant appeared confused and disoriented, smelled of alcohol, and had difficulty maintaining balance. *Id.* ¶ 3. The defendant told the officer that he had consumed a six-pack of

6

beer and had thrown all but one can out of the vehicle window along the highway as he was driving to the convenience store. *Id*. ¶ 4. The defendant also told the officer that his car had broken down. *Id*. ¶ 5. After attempting to start the car, the officer concluded that the car "'had a dead battery or something.'" *Id*. The defendant refused to perform field sobriety tests or provide a breath sample, admitting that he was too drunk to pass the tests. *Id*. Our Supreme Court held that while there may have been substantial evidence to support the conviction for DWI based on circumstantial evidence of having driven the vehicle, there was a "real possibility that the jury may have convicted [the d]efendant based on the actual physical control of his vehicle without a general intent to drive so as to endanger himself or the public." *Id*. ¶ 10 (emphasis omitted). Therefore, the Court reversed and remanded the defendant's conviction for trial on whether he actually had driven the vehicle while intoxicated. *Id*. ¶ 28.

In this case, like in *Mailman*, the jury was instructed that it could convict Defendant of DWI if it found that he was driving the motor vehicle or was "in actual physical control [of the vehicle] whether or not the vehicle [was] moving." No definition of "actual physical control" was provided. The jury returned a general verdict of guilty without indicating whether it was based on a finding of driving or actual physical control. In *State v. Olguin*, our Supreme Court held that "due process

does not require a guilty verdict to be set aside if an alternative basis of conviction is only factually inadequate to support a conviction." 120 N.M. 740, 741, 906 P.2d 731, 732 (1995). However, "a conviction under a general verdict must be reversed if one of the alternative bases of conviction is legally inadequate[.]" *Id.* A conviction in the latter circumstance violates due process because a jury cannot be expected to reach the correct result when they "have been left the option of relying upon a legally inadequate theory[.]" *State v. Olguin*, 118 N.M. 91, 98, 879 P.2d 92, 99 (Ct. App. 1994) (internal quotation marks and citation omitted), *aff'd in part, set aside in part*, 120 N.M. 740, 906 P.2d 731. *Mailman* relied on *Olguin* in reversing the defendant's conviction. *Mailman*, 2010-NMSC-036, ¶ 11. So do we. Because the jury in this case may have convicted Defendant of DWI based on a theory of actual physical control without proof of a general intent to drive so as to endanger himself or the public, his conviction must be reversed.

**2.      Prosecution Based on an Inference of Past Driving**

In *Mailman*, the Court held that "[a]ctual physical control is not necessary to prove DWI unless there are no witnesses to the vehicle's motion *and insufficient circumstantial evidence to infer that the accused actually drove while intoxicated.*" *Id.* ¶ 28. Defendant argues that the State did not present sufficient evidence to infer that Defendant drove while intoxicated. Specifically, Defendant argues that any

8

evidence the State did provide was insufficient in that it only supported the inference that either Defendant or Mr. Gould was the driver of the vehicle when it traveled from Apache Y to Apache Mini-Storage. We disagree.

While the State did not introduce direct evidence that Defendant drove while intoxicated, it presented adequate circumstantial evidence that could lead a reasonable juror to convict Defendant of DWI. *See* UJI 14-4501 NMRA. There was testimony from which the jury could infer that Defendant was driving earlier in the evening, that Defendant generally drove when with Mr. Gould, that the vehicle traveled approximately fifty to seventy-five yards from the Apache Y to Apache Mini-Storage, that at Apache Mini-Storage, where the vehicle was parked, the officer observed the headlights and taillights of the car on and then turned off, that Defendant was found in the driver's seat of the parked car within a few minutes of a dispatch call that the vehicle had left the Apache Y, that the officer did not observe any shifting or movement in the car when he approached it, and that both Defendant and Mr. Gould were intoxicated. From this evidence, a jury could reasonably find that Defendant drove the vehicle in an intoxicated state from Apache Y to Apache Mini-Storage. Accordingly, although we reverse Defendant's conviction because the State did not, as a matter of law, prove that Defendant had formed the requisite intent required to

convict based on actual physical control of his vehicle, we remand this case for a new trial based on whether Defendant actually drove while intoxicated.

**CONCLUSION**

For the foregoing reasons, Defendant's conviction is reversed, and this case is remanded for trial, consistent with this Opinion.

**IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**LINDA M. VANZI, Judge**