This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                      NO.   31,373

**RICHARD MACLAURIN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Stephen Pfeffer, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
B. Douglas Wood III, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**KENNEDY, Judge.**

Richard MacLaurin (Defendant) appeals from his felony conviction for driving while under the influence of intoxicating liquor and/or drugs (DWI). He claims there was insufficient evidence to support his conviction because the State did not prove he was in actual physical control of the truck while intoxicated. We find no merit to Defendant's argument and affirm.

## I.    BACKGROUND

On May 25, 2010, Shasta Brooks, a small business owner, contacted the police regarding an old pick-up truck parked in the parking lot outside her business. She was concerned about the negative impact the truck had on her business because it "really looked bad." She was also concerned the driver might be a drunk driver. Brooks notified the police that she had seen Defendant park the truck, walk away toward a local restaurant and bar, and return to the truck after approximately one hour. While waiting for the police to arrive, Brooks approached the truck and observed Defendant in the driver's seat, apparently "passed out." She testified that she had seen the truck in the parking lot approximately three times per week over the previous one to two months, and it would typically remain in the parking lot for three to four hours. She had never seen anyone other than Defendant associated with the truck.

2

Santa Fe Police Officer Rachel Meserve was dispatched in response to Brooks's call. She observed Defendant in the driver's seat of the truck, which was not running. Defendant told Officer Meserve he was waiting for a phone call. The officer smelled the odor of alcohol on Defendant's breath and noted that his speech was slurred, and he seemed "a little confused." She asked Defendant for the keys to the truck's ignition, and he retrieved them from the pocket of his pants.

Santa Fe Police Officer Donna Beck, assigned to the DWI Unit, was also dispatched in response to Brooks's call and arrived on scene at approximately 4:10 p.m. Officer Beck spoke to Officer Meserve and then approached Defendant. Officer Beck testified to the following:

> [H]e told me he had two beers earlier. And I asked him what he was doing there, and he told me that he was a contractor, and that he was waiting for a phone call, and as soon as he got this phone call, he would be leaving. And I said, "You're waiting for a call?" He said, "Yes, for my next job. I'm just waiting for this call to come in." And he had a cell phone. . . . He says, "As soon as I get this call, I'm out of here. I'll leave this place. I won't come back and park here."

Officer Beck asked Defendant to step out of the truck, and he performed field sobriety tests. While Officer Beck and Defendant were walking away from the truck, Defendant stated that "he was a contractor" and "something about he had to go to work." Defendant indicated signs of impairment or intoxication in his performance of the field sobriety tests. Defendant later agreed to provide two breath samples,

which showed a blood alcohol content of .08. Defendant moved for a directed verdict at the close of the State's case. The district court denied the motion. Defendant then testified that he "had a couple of beers" but "had no intention of driving whatsoever." He claimed he was waiting for a phone call from one of his co-workers, who always drove the truck and was going to drive him home.

The district court found Defendant guilty. The judge stated: "The [c]ourt finds, beyond a reasonable doubt, that . . . Defendant intended to drive this [truck] and would pose a threat or danger to himself or others in the public. In finding this, . . . I find the story of . . . Defendant, frankly, contrived and nonsensical." The district court sentenced Defendant to two years imprisonment because this was his fifth offense. Defendant was given credit for time served, and the remainder of his sentence was suspended.

**II.    DISCUSSION**

On appeal, Defendant challenges the sufficiency of the evidence to support his conviction. "[O]ur review for sufficiency of the evidence is deferential to the jury's findings." *State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057. We review direct and circumstantial evidence "in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* (internal quotation marks and citation omitted).

Defendant was convicted of DWI, pursuant to NMSA 1978, Section 66-8-102(A) (2010), which provides that "[i]t is unlawful for a person who is under the influence of intoxicating liquor to drive a vehicle within this state." Our Supreme Court has "interpreted the word 'drive' to mean either driving a motor vehicle, or being in actual physical control whether or not the vehicle is moving." *State v. Mailman*, 2010-NMSC-036, ¶ 7, 148 N.M. 702, 242 P.3d 269 (internal quotation marks and citation omitted). In *State v. Sims*, the Supreme Court held that, to secure a DWI conviction under the actual physical control standard, the State must prove "(1) the defendant was actually, not just potentially, exercising control over the vehicle, and (2) the defendant had the general intent to drive so as to pose a real danger to himself, herself, or the public." 2010-NMSC-027, ¶ 4, 148 N.M. 330, 236 P.3d 642. Defendant contends that the State failed to meet its burden of proving he was in actual physical control of the truck and had the general intent to drive.

In *State v. Johnson*, the Supreme Court held that "a person is in actual physical control over a vehicle when he or she exercises direct influence over the vehicle." 2001-NMSC-001, ¶ 19, 130 N.M. 6, 15 P.3d 1233. The *Johnson* Court explained: "[T]he clear purpose of the 'actual physical control' element of the DWI statute is to deter persons from placing themselves in a situation in which they can directly

commence operating a vehicle while they are intoxicated, regardless of the location of the vehicle." *Id.*

In *Sims*, the Supreme Court reconsidered its holding in *Johnson*. *See Sims*, 2010-NMSC-027, ¶¶ 2-3. The defendant in *Sims* was found "passed out or asleep behind the wheel of his vehicle . . . in a commercial parking lot" with the keys "on the front passenger seat." *Id.* ¶ 1. Our Court had affirmed the defendant's DWI conviction under *Johnson*. *See Sims*, 2010-NMSC-027, ¶ 2. Without overruling *Johnson*, the *Sims* Court reversed. *Sims*, 2010-NMSC-027, ¶ 39. The Supreme Court stated that it "[did] not believe that the Legislature intended to forbid intoxicated individuals from merely entering their vehicles as passive occupants or using their vehicles for temporary shelter." *Id.* ¶ 3. The Supreme Court held that "a fact finder cannot simply assume or speculate that the individual in question might sometime in the future commence driving his or her vehicle." *Id.* ¶ 4. The Supreme Court stated:

> Facts that suggest what the defendants might do or the ease with which the defendants could commence driving are now insufficient to establish actual physical control. A totality of the circumstances test must prove what [the] defendants have done and what they intend to do, not merely what they might do.

*Id.* ¶ 38.

Relying principally on *Sims*, Defendant contends the State "failed to put on evidence of actual physical control of the [truck] because . . . the keys were not in the

ignition and the engine was not running." *Sims* is inapposite. Here, unlike in *Sims*, there was evidence regarding what Defendant intended to do. He intended to drive when he received a phone call regarding his next job. Officer Beck testified that when she first questioned Defendant, he told her "he was waiting for a phone call, and as soon as he got this phone call, he would be leaving." He had a cell phone with him and said he was "just waiting for [a call for his next job] to come in." After stepping out of the truck, Defendant told Officer Beck "he was a contractor" and said "something about he had to go to work." The district court was not left to speculate as to whether, absent police intervention, Defendant would have roused himself and driven the truck, so as to pose a danger to himself or the public.

Relying on *State v. Cotton*, Defendant also argues that his conviction must be reversed because the State failed to prove he intended to drive while he was intoxicated. 2011-NMCA-096, 150 N.M. 583, 263 P.3d 925. He argues that "[t]he intoxication and operation must be proven to have occurred simultaneously. It is insufficient for a person to be intoxicated with the intent to drive at some unknown later time." Defendant is incorrect. *Cotton* involved past driving, not future driving. *See id.* ¶ 14 ("At [the d]efendant's trial, the State's exclusive theory was that he drove the van *before* he encountered [the police officers] and was impaired to the slightest degree at that time."). In that context, we held the State had to present evidence that

7

the driving and impairment overlapped. *Id.* ¶ 15. We have never held that such evidence is necessary in the context of future driving. Indeed, it would be impossible to show that a defendant's impairment overlapped with future driving that had not yet occurred.

Under a totality of the circumstances test, Officer Beck's testimony regarding Defendant's statements of intent, combined with Defendant's location in the driver's seat with the keys in his pocket, constitutes sufficient evidence to support his conviction. *See Sims*, 2010-NMSC-027, ¶ 38. The district court was free to reject Defendant's story that he only intended to leave when someone else came to drive the truck. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [a d]efendant's version of the facts.").

**III.    CONCLUSION**

We affirm Defendant's conviction for DWI.

**IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

8

_____
**JONATHAN B. SUTIN, Judge**


_____
**J. MILES HANISEE, Judge**