IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2012-NMSC-025

Filing Date: July 26, 2012

Docket No. 32,942

ERIC SCHUSTER,

       Petitioner-Petitioner,

v.

STATE OF NEW MEXICO
DEPARTMENT OF TAXATION
& REVENUE, MOTOR VEHICLE
DIVISION,

       Respondent-Respondent,

and

STATE OF NEW MEXICO,

       Real Party in Interest.

ORIGINAL PROCEEDING ON CERTIORARI
Thomas J. Hynes, District Judge

Titus & Murphy Law Firm
Victor A. Titus
Farmington, NM

for Petitioner

Gary K. King, Attorney General
Julia Belles, Special Assistant Attorney General
Taxation & Revenue Department
Santa Fe, NM

for Respondent and Real Party in Interest

1

Rasheed & Associates, P.C.
Ousama M. Rasheed
Albuquerque, NM

Frechette & Associates, P.C.
Todd Hotchkiss
Albuquerque, NM

for Amicus Curiae New Mexico Criminal
Defense Lawyers Association

**OPINION**

**CHÁVEZ, Justice.**

{1}     Eric Schuster (Schuster) appeals a decision of the Taxation and Revenue Department, Motor Vehicle Division (MVD) to revoke his driver's license pursuant to the Implied Consent Act, NMSA 1978, §§ 66-8-105 to -112 (1978, as amended through 2007).  The predominant issue in this case is whether MVD must find that the arrest of a driver charged with driving while intoxicated (DWI) was constitutional as one of the prerequisites to revoking the driver's license.  We answer this question in the affirmative and overrule *Glynn v. State, Taxation & Revenue Dep't, MVD*, 2011-NMCA-031, 149 N.M. 518, 252 P.3d 742 to the extent the *Glynn* court held that the constitutionality of the arrest need not be decided in DWI license revocation hearings.  We hold that the arrest required for a license revocation must be constitutional, which also requires that the police activity leading to the arrest must also be constitutional.  Because we hold that the MVD must evaluate the constitutionality of the arrest and the police activity leading to the arrest, for purposes of this opinion we will refer to all such activity as the "arrest".

{2}     The secondary issues concern (1) the district court's jurisdiction to hear an appeal from an MVD license revocation hearing regarding the constitutionality of an arrest, and (2) whether the district court erred in affirming both MVD's revocation of Schuster's driver's license and MVD's finding that the arrest of Schuster was constitutional.  We hold that (1) the district court's review of constitutional issues in a license revocation hearing is conducted under its appellate jurisdiction and not under its original jurisdiction, and (2) the district court did not err in affirming MVD's revocation of Schuster's driver's license because the arrest of Schuster was constitutional.

**I.     BACKGROUND**

{3}     Between 1 and 2 a.m. of May 30, 2009, Farmington Police Officer David Karst (Karst) observed Schuster driving a motorcycle in the parking lot of a bar when the motorcycle fell over on its side before Schuster reached the roadway.  Because he was concerned that Schuster was injured, Karst drove into the parking lot, asked Schuster if he

was all right, and then asked Schuster to move his motorcycle approximately fifteen feet away from the entrance to the parking lot. Karst described his purpose in initially approaching Schuster as "[a] welfare check, plain and simple," to confirm that Schuster was not injured and to assess any damage to the motorcycle for possible insurance claims.

**{4}** After Schuster moved his motorcycle, Karst exited his vehicle and asked Schuster if he had any injuries and whether there was any damage to his motorcycle. Schuster denied being injured and showed Karst the damage to his motorcycle, which was a bent clutch handle and a bent gear shift. While speaking with him, Karst smelled alcohol on Schuster's breath, noticed that his eyes were bloodshot and watery, and asked Schuster how much he had had to drink that night. Schuster said that he had consumed two beers.

**{5}** Karst had Schuster perform field sobriety tests, including the walk-and-turn and the one-leg stand tests. Karst also administered the horizontal gaze nystagmus (HGN) test to Schuster. Karst testified that Schuster performed these tests poorly. As a result of this investigation, Karst arrested Schuster for DWI and transported him to the San Juan County Detention Center. Upon their arrival at the detention center, Karst read Schuster the Implied Consent Act advisory after which Schuster verbally consented to a breath test. Schuster gave two breath samples, which registered readings of .13 and .14, respectively indicating that his blood alcohol content exceeded the legal limit. Karst then issued Schuster a notice that his driver's license would be revoked. *See* § 66-8-111.1. Schuster requested a hearing before MVD to challenge the revocation of his license.

**{6}** On July 13, 2009 MVD held an administrative license revocation hearing at which MVD sustained the revocation of Schuster's driver's license. MVD found, in relevant part, that Karst had reasonable grounds to believe Schuster was driving a motor vehicle under the influence of alcohol in accordance with Section 66-8-112(F)(1) and that Karst had arrested Schuster in accordance with Sections 66-8-112(F)(1)-(2). MVD found that Karst had initially contacted Schuster in Karst's community caretaker role and that Karst's expansion of the initial contact into a DWI investigation was based on a reasonable suspicion that Schuster was intoxicated, citing *State v. Walters*, 1997-NMCA-013, ¶ 26, 123 N.M. 88, 934 P.2d 282 (holding that an officer develops reasonable suspicion to continue an investigation after noting alcohol on the driver's breath). MVD also found that Karst had probable cause to arrest Schuster for DWI because Schuster was in actual physical control of the motorcycle, relying on *Boone v. State*, 105 N.M. 223, 227, 731 P.2d 366, 370 (1986) (holding that a driver need only be in physical control of a vehicle and not actually driving to form probable cause to arrest), *holding limited on other grounds by State v. Sims*, 2010-NMSC-027, ¶¶ 10, 30-32, 148 N.M. 330, 236 P.3d 642.

**{7}** Schuster appealed to the district court which, based on substantial evidence in the record, affirmed MVD's decision sustaining the revocation of his driver's license. Schuster then appealed to the Court of Appeals, raising three issues: whether the district court erred by (1) refusing to hold a de novo hearing to decide the constitutionality of his arrest; (2) finding that the arrest of Schuster was constitutional; and (3) affirming MVD's finding of

probable cause because the MVD improperly considered the results of the HGN test. *Schuster v. MVD, Dep't of Taxation & Revenue*, No. 30,023, slip op. at 2 (N.M. Ct. App. Mar. 11, 2011). The Court of Appeals affirmed Schuster's first two issues in a memorandum opinion, declining to grant certiorari on Schuster's third issue of whether the district court erred in affirming MVD despite its reliance on the results of the HGN test, *id.*, and therefore did not address it. Schuster did not appeal the denial of certiorari on the third issue and therefore we do not consider it. The Court of Appeals held that *Glynn*, 2011-NMCA-031, ¶¶ 19, 26, 33, controlled the outcome of the case for the first two issues. *Schuster*, No. 30,023, slip op. at 2, 3. *Glynn* held that "the [Implied Consent] Act does not require the MVD to address the validity of the underlying traffic stop and because the exclusionary rule does not apply in revocation proceedings, the constitutionality of the stop need not be decided by any tribunal for purposes of license revocation under the Act." 2011-NMCA-031, ¶ 33.

**{8}**     We granted Schuster's petition for writ of certiorari to consider whether (1) MVD must conclude that an arrest as required by Section 66-8-112(F)(2) was constitutional before revoking a driver's license, (2) the district court should review license revocation appeals de novo under its original jurisdiction or for substantial evidence as an appellate court, and (3) the district court erred in affirming the MVD's revocation of Schuster's license. We hold that (1) Sections 66-8-112(E), (F), and (G) require MVD to decide whether the arrest and underlying police activity were constitutional as prerequisites to revoking a driver's license under the Implied Consent Act; (2) a district court reviews an MVD determination of the constitutionality of the arrest as an appellate court; and (3) MVD correctly found that Schuster's arrest and all of the underlying police activity were constitutional and therefore Schuster's driver's license was properly revoked.

## II.     DISCUSSION

## A.     THE ARREST AND UNDERLYING POLICE ACTIVITY MUST BE CONSTITUTIONAL TO SUPPORT THE REVOCATION OF A DRIVER'S LICENSE UNDER THE IMPLIED CONSENT ACT

**{9}**     Whether MVD must conclude that the arrest of a driver for DWI is constitutional before revoking a driver's license requires us to interpret the relevant provisions of Section 66-8-112. "Statutory interpretation is an issue of law, which we review de novo." *N.M. Indus. Energy Consumers v. N.M. Pub. Regulation Comm'n*, 2007-NMSC-053, ¶ 19, 142 N.M. 533, 168 P.3d 105. When reviewing a statute, we must give effect to the Legislature's intent by first looking at "the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Id.* ¶ 20.

**{10}**     Section 66-8-112 details the four elements that must be decided by MVD to revoke a driver's license. Failure to find all four elements precludes MVD from revoking a driver's license. § 66-8-112(G). For purposes of this appeal, the only relevant element is whether "the person was arrested". § 66-8-112(E)(2). Therefore, in this case, if Schuster was not

4

arrested, MVD cannot sustain the revocation of his driver's license. *See* § 66-8-112(G). However, we must determine if the Legislature intended to authorize MVD to revoke a driver's license when there is an "arrest" under Section 66-8-112(F)(2) even when the arrest is unconstitutional.

**{11}** Schuster argues that "arrest" should be read to mean a constitutional arrest. MVD, relying on *Glynn*, responds that neither MVD nor the district court are required to analyze the constitutionality of the arrest or the police activity leading to the arrest, because any arrest satisfies the Implied Consent Act. *See id.,* 2011-NMCA-031, ¶ 18. We agree with Schuster.

**{12}** In *Glynn*, a police officer observed Tyler Glynn swerve in his vehicle and subsequently strike a curb. 2011-NMCA-031, ¶ 2. After the officer made contact with Glynn, the officer noted Glynn smelled of alcohol and Glynn admitted to drinking alcohol. The officer administered field sobriety tests, which Glynn failed, and two breath alcohol tests indicated .09 and .08 for his blood alcohol content. *See id*. As a result, Glynn was arrested for DWI and was served with a notice that his driver's license would be revoked under the Implied Consent Act. *Id*. During the criminal DWI trial, Glynn moved to suppress the evidence obtained during the traffic stop. *Id*. The municipal court granted the motion, finding that the officer did not have probable cause to stop Glynn, and then dismissed the criminal complaint against him with prejudice. *Id*.

**{13}** Armed with the municipal court's order suppressing the evidence, Glynn filed two motions with MVD. The first was a motion to dismiss the license revocation hearing, claiming that MVD was collaterally estopped from considering the constitutionality of the stop. *Id.* ¶ 3. The second was a motion to suppress the evidence obtained as a result of the stop because the stop was unconstitutional. *Id.* MVD declined to apply the collateral estoppel doctrine and denied the motion to suppress, thereby admitting all of the evidence against Glynn during the license revocation hearing. *See id*. ¶ 4. Glynn appealed to the district court, arguing that (1) MVD was collaterally estopped from considering the constitutionality of the stop, (2) MVD did not have jurisdiction to consider the constitutionality of the stop and, therefore, the district court should exercise its original jurisdiction, (3) the officer did not have reasonable suspicion to stop Glynn, and (4) the results of the blood alcohol test were invalid. *Id*. ¶¶ 5-6. The district court affirmed MVD but declined to either review the constitutionality of the stop under its original jurisdiction or address whether MVD had jurisdiction to consider the constitutionality of the stop. *See id*. ¶ 5.

**{14}** Glynn then appealed to the Court of Appeals, *id.* ¶ 6, which affirmed the district court and MVD. The Court of Appeals held that (1) the exclusionary rule, which would exclude evidence obtained as a result of an unconstitutional arrest, does not apply in a license revocation hearing, *id.* ¶ 26, and therefore (2) "the validity of the traffic stop is irrelevant to the issues to be decided by the MVD," *id.* ¶ 1.

**{15}** Whether the exclusionary rule applies in license revocation hearings does not control whether MVD must analyze the constitutionality of the arrest of a driver charged with DWI. The question is did the Legislature intend a finding under Section 66-8-112(F)(2) that "the person was arrested" to include a finding that the person's arrest was constitutional. If the answer is no, even an unconstitutional arrest will satisfy the requirement in Section 66-8-112(F)(2). If the answer is yes, the legislature has provided the remedy for an unconstitutional arrest: MVD is prohibited from revoking the driver's license. *See* § 66-8-112(G).

**{16}** Prior to the *Glynn* court's holding, MVD had maintained, at least since 1988, that it had implicit authority to determine the constitutionality of an arrest. *See Glynn,* 2011-NMCA-031, ¶ 19 (citing *State ex rel. Taxation & Revenue Dep't MVD v. Van Ruiten*, 107 N.M. 536, 538, 760 P.2d 1302, 1304 (Ct. App. 1988). And although not specifically addressing what is meant by the term "arrest," the Court of Appeals held in *State v. Richerson*, 87 N.M. 437, 439-440, 535 P.2d 644, 646-647 (Ct. App. 1975), that a constitutional arrest is essential to application of the Implied Consent Act.

**{17}** Numerous other jurisdictions have held that a constitutional arrest is required for the application of an implied consent statute, basing their holdings on the plain meaning of the word "arrest" and on the Fourth Amendment protections against an unreasonable search and seizure. In *Holland v. Parker*, 354 F. Supp. 196, 199 (D.S.D. 1973), a three-judge panel held that the Fourth Amendment requires a constitutional arrest prior to a request for submission to a blood test under the South Dakota implied consent statute. The *Holland* court, citing the United States Supreme Court opinion in *Schmerber v. California*, 384 U.S. 757, 768 (1966), reasoned that

> it would seem that if a police officer . . . cannot require a person to take a blood test without a warrant unless there is a lawful arrest and emergency circumstances, then neither could the officer demand that a licensee submit to the blood test, without these same constitutional prerequisites, when refusal would result in automatic loss of his [or her] license. If it were any other way, the Fourth Amendment protections would be rendered valueless since asserting them would result in a penalty potentially more severe than conviction for the alleged public offense.

*Holland*, 354 F. Supp. at 199. *See also People v. Krueger*, 567 N.E.2d 717, 721, 723 (Ill. App. Ct. 1991) (holding that there needs to be a valid, lawful arrest to trigger license revocation proceedings because, *inter alia,* to construe the statute otherwise would breach the court's duty to avoid construing a statute that will seriously call into question the constitutionality of the statute); *Watford v. Bureau of Motor Vehicles*, 674 N.E.2d 776, 778-79 (Ohio Ct. App. 1996) (holding, implicitly, that a Bureau of Motor Vehicles hearing officer must determine whether an arrest supporting a license revocation, is constitutional); *Pooler v. MVD*, 755 P.2d 701, 703 (Or. 1988) (en banc)(holding that "the legislature must have intended a valid arrest when it used the term 'under arrest' in [the] statute"); *State v.*

*Wetherell*, 514 P.2d 1069, 1072 (Wash. 1973) (en banc) (declining to interpret the word "arrest" in its implied consent statute to include unlawful arrests).

**{18}** We conclude, consistent with these other jurisdictions, that the plain meaning of the word "arrest" means an arrest that complies with the protections of the Fourth Amendment to the United States Constitution, and Article II, Section 10 of the New Mexico Constitution. Therefore, an arrest and the underlying police activity leading to the arrest, must be constitutional before a driver's license can be revoked under the Implied Consent Act. Our interpretation is consistent with the presumed constitutionality of a statute, *City of Albuquerque v. Jones*, 87 N.M. 486, 488, 535 P.2d 1337, 1339 (1975) (a statute is presumed constitutional), and avoids an interpretation of the Act that would call in to question its constitutionality. *See Lovelace Med. Ctr. v. Mendez*, 111 N.M. 336, 340, 805 P.2d 603, 607 (1991) ("It is, of course, a well-established principle of statutory construction that statutes should be construed, if possible, to avoid constitutional questions." (citation omitted)).

**{19}** To summarize, the requirement in Section 66-8-112(E)(2)-(F)(2) that MVD find that "the person was arrested" requires a finding that the arrest and police activity leading to the arrest were constitutional. We overrule *Glynn*, 2011-NMCA-031, to the extent that it holds otherwise. Because we conclude that MVD must determine whether the arrest is constitutional, we next consider how the district court reviews the constitutionality of an arrest on appeal.

**B.      A DISTRICT COURT DOES NOT EXERCISE ORIGINAL JURISDICTION WHEN IT REVIEWS AN APPEAL REGARDING THE CONSTITUTIONALITY OF AN ARREST UNDER THE IMPLIED CONSENT ACT**

**{20}** Schuster argues that even if MVD must consider the constitutionality of an arrest, the district court reviews a license revocation de novo under its original jurisdiction and not for substantial evidence under its appellate jurisdiction. Schuster relies on *Maso v. State of New Mexico Taxation & Revenue Dep't, MVD*, 2004-NMCA-025, ¶¶ 2, 12, 135 N.M. 152, 85 P.3d 276, *aff'd*, 2004-NMSC-028, 136 N.M. 161, 96 P.3d 286, for the proposition that constitutional issues are beyond the subject matter jurisdiction of the MVD; therefore, constitutional issues "must be considered in the first instance by the district court pursuant to its original jurisdiction." We disagree with Schuster because *Maso* is not controlling in this case.

**{21}** In *Maso*, the Court of Appeals held that failure to serve the driver with a Spanish-language notice of license revocation was a denial of due process, a constitutional issue beyond the scope of MVD's review. *Id.* ¶ 12. Thus, *Maso* stands for the legal proposition that any constitutional challenge beyond MVD's scope of statutory review is brought for the first time in district court under its original jurisdiction. *See id.* ¶ 14.

**{22}** Because we hold that MVD must rule on the constitutionality of an arrest, the district

7

court must review any appeal of MVD's ruling in its appellate capacity. *See N.M. State Bd. of Psychologist Exam'rs v. Land*, 2003-NMCA-034, ¶ 5, 133 N.M. 362, 62 P.3d 1244 ("When acting in its appellate capacity, the district court's scope and standard of review is limited in the same manner as any other appellate body.").

**{23}** The constitutionality of an arrest is reviewed on appeal as a mixed question of law and fact in which factual questions are considered for substantial evidence and the application of law to the facts is reviewed de novo. *See State v. Reynolds*, 119 N.M. 383, 384, 890 P.2d 1315, 1316 (1995) ("Because this case involves a mixed question of law and fact, we use the substantial evidence standard for review of the facts and then make a de novo review of the trial court's application of the law to those facts."); *State v. Granillo-Macias*, 2008-NMCA-021, ¶ 7, 143 N.M. 455, 176 P.3d 1187 (stating that the standard of review to be applied to a lower court's legal conclusions is de novo and the facts will be reviewed for substantial evidence, giving deference to the lower court's findings).

## C.   THE DISTRICT COURT DID NOT ERR IN AFFIRMING MVD'S DECISION TO REVOKE SCHUSTER'S DRIVER'S LICENSE

**{24}** Because we conclude that the constitutionality of an arrest is reviewed by the district court in its appellate capacity, we next review whether the district court erred in affirming MVD in this case. In this case, MVD addressed the constitutionality of Karst's actions with Schuster some two years before the Court of Appeals issued *Glynn*. MVD found that (1) Karst had permissibly interacted with Schuster in Karst's community caretaker role, relying on *Walters,* 1997-NMCA-013, ¶ 26; (2) Karst permissibly expanded the caretaker encounter into a DWI investigation based on reasonable suspicion because of Schuster's breath smelling of alcohol and his watery and bloodshot eyes; and (3) Karst had probable cause to arrest Schuster for DWI after Schuster failed several field sobriety tests and because Schuster had been in physical control of the motorcycle when Karst first came on the scene.

**{25}** Schuster argues that the district court and MVD erred in sustaining the revocation of his driver's license for two reasons. One, because he was unreasonably seized by Karst when Karst first asked him to move the motorcycle and therefore his subsequent arrest was tainted by Karst's initial improper actions. Two, the initial stop by Karst was unconstitutional because it was pretextual. We are not persuaded by either argument.

*1. KARST'S INITIAL ENCOUNTER WITH SCHUSTER WAS AS A COMMUNITY CARETAKER AND KARST DEVELOPED REASONABLE SUSPICION TO EXPAND THE ENCOUNTER INTO A DWI INVESTIGATION.*

**{26}** MVD found that at the time of Karst's initial encounter with Schuster, Karst was acting in his role as a community caretaker. An officer who is acting as a community caretaker does not violate the Fourth Amendment. *State v. Ryon*, 2005-NMSC-005, ¶ 12, 137 N.M. 174, 108 P.3d 1032. In *Ryon* this Court clarified that the test for the community caretaker exception to the warrant requirement is not the voluntary nature of the encounter,

*see Ryon*, ¶ 20 ("*Jason L.* and *Walters* ought not be viewed as limiting the community caretaker exception to voluntary . . . police-citizen encounters."), but rather, "[w]hen determining whether a warrantless search or seizure is reasonable on the basis of the community caretaker exception, we must measure "the public need and interest furthered by the police conduct against the degree of and nature of the intrusion upon the privacy of the citizen." *Ryon*, 2005-NMSC-005, ¶ 24 (internal quotation marks and citation omitted). The test we employ is one of objective reasonableness based on the totality of the circumstances. *See id.,* ¶ 30 ("Our community caretaker cases also employ an objective test to determine whether a vehicle stop is based on a reasonable concern for public safety.").

**{27}** In this case, after Karst saw Schuster's motorcycle fall over, he had a reasonable basis for checking on Schuster's welfare. Because of the motorcycle's size and weight, Karst was concerned that Schuster might have been injured as a result of the incident. Karst's initial action was only to ask Schuster if he was okay. According to Karst's testimony, when he witnesses an accident, he must assess whether there has been an injury and whether the owner of the vehicle would like to file a report for insurance purposes. If Karst was conducting a "welfare check, plain and simple," then it is logical to infer that he would investigate the incident until he was satisfied that his assistance was not needed. *See Ryon*, 2005-NMSC-005, ¶ 25, 137 N.M. 174, 108 P.3d 1032 (recognizing that a continued investigation by an officer in his or her role as a community caretaker is reasonable as long as the officer is motivated by a desire to offer assistance and not investigate).

**{28}** Although Karst was in uniform and driving a marked police vehicle, he approached Schuster in a non-threatening manner, and his asking Schuster whether he was okay can be viewed objectively as a question that arises out of a concern for Schuster's welfare and not an intent to investigate. Karst's request for Schuster to move his motorcycle away from the parking lot exit was a reasonable action to prevent a safety hazard—the blocking of the exit while bar patrons were trying to leave the bar. Under the facts before us, Schuster was not seized for purposes of the Fourth Amendment during this initial contact.

**{29}** However, Karst expanded his role from being a community caretaker to investigating a possible DWI. This expansion must also be constitutional, which requires reasonable, articulable suspicion. *See Jason L.*, 2000-NMSC-018, ¶ 14 ("An arrest must be supported by probable cause and an investigatory stop must be supported by reasonable suspicion."); *see also State v. Leyva*, 2011-NMSC-009, ¶ 10, 149 N.M. 435, 250 P.3d 861 ("The scope of the investigation may be expanded where the officer has reasonable and articulable suspicion that other criminal activity has been or may be afoot.") (internal quotation marks and citation omitted)).

**{30}** Karst articulated many facts to support a finding that he had reasonable suspicion to expand what was a community caretaker function into a DWI investigation. Karst testified that he smelled a strong odor of alcohol coming from Schuster's mouth and Schuster's eyes were bloodshot and watery. When Karst asked Schuster if he had been drinking, Schuster admitted that he had consumed two beers. When the totality of the circumstances are

9

considered, Karst had enough particularized and articulable information to continue investigating whether Schuster was intoxicated. This testimony supported the MVD hearing officer's finding that Karst's continued investigation of Schuster was reasonable because he had formed reasonable suspicion.

**{31}** Karst continued his investigation by asking Schuster to perform field sobriety tests, including the walk-and-turn test and the one-leg stand test. Karst testified that Schuster performed poorly on these tests. Moreover, Karst had already observed Schuster driving a motorcycle when the motorcycle fell over on its side before Schuster reached the roadway. Based on this information, Karst arrested Schuster. Schuster subsequently consented to a breath test and gave two samples, which registered readings of .13 and .14, respectively, which suggested that his blood alcohol content exceeded the legal limits. Thus, there was sufficient testimony for MVD hearing officer to find that Karst had probable cause to arrest Schuster for DWI.

### 2. KARST'S PURPOSE IN MAKING CONTACT WITH SCHUSTER WAS NOT PRETEXTUAL.

**{32}** However, Schuster next argues that his arrest was unconstitutional because the stop was pretextual at its inception and therefore unconstitutional under Article II, Section 10 of the New Mexico Constitution citing *State v. Ochoa,* 2009-NMCA-002, 142 N.M. 32, 206 P.3d 143. Schuster contends that Karst approached him with the primary motive of investigating a DWI. MVD contends that this argument was not properly preserved by Schuster and that "[t]here is no ruling from the district court for this Court to review."

**{33}** To preserve an argument for appellate review, "it must appear that an appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." *Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct. App. 1987). In this case, Schuster called the issue to the district court's attention by arguing that "[T]he officer ordered [Schuster] to stop and go to a location in the lot so that the officer could investigate. Not to protect or preserve life or to avoid serious injury but as a pretext to do a [DWI] investigation." Schuster cited *State v. Ochoa* as establishing the test for determining whether a stop was pretextual. Schuster also argued this issue before the Court of Appeals. We conclude that Schuster did preserve this issue.

**{34}** New Mexico has departed from United States Supreme Court precedent in *Whren v. United States*, 517 U.S. 806, 809-10 (1996), by holding that pretextual traffic stops are constitutionally unreasonable. *Ochoa*, 2009-NMCA-002, ¶¶ 19-20, 38. "[A] pretextual stop [is] a detention supportable by reasonable suspicion or probable cause to believe that a traffic offense has occurred, but is executed as a pretense to pursue a 'hunch,' a different[,] more serious investigative agenda for which there is no reasonable suspicion or probable cause." *State v. Gonzales*, 2011-NMSC-012, ¶ 12, 150 N.M. 74, 257 P.3d 894 (internal quotation marks and citation omitted). A three-step approach is followed when determining whether a pretextual stop has occurred:

10

First, the State has the burden to establish reasonable suspicion to stop the motorist. If the State fails in its burden, the stop is unconstitutional. Second, if the State satisfies its burden, the defendant may still establish that the seizure was unreasonable by proving that the totality of the circumstances indicates the officer had an unrelated motive to stop the motorist that was not supported by reasonable suspicion. If the defendant does not satisfy the burden, the stop is constitutional. Third, if the defendant satisfies the burden, there is a presumption of a pretextual stop, and the State must prove that the totality of the circumstances supports the conclusion that the officer who made the stop would have done so even without the unrelated motive.

*Gonzales*, 2011-NMSC-012, ¶ 12 (citing *Ochoa*, 2009-NMCA-002, ¶ 40) (the *Ochoa* test).

**{35}**    Regarding the first prong of the test, MVD found that Karst's initial contact with Schuster was in Karst's capacity as a community caretaker. We have already concluded that MVD was correct in finding that Karst initiated contact with Schuster as a community caretaker, and thus the State met its first burden in establishing a proper reason for the initial encounter.

**{36}**    The burden now shifts to Schuster to prove that the totality of circumstances indicate Karst had an unrelated motive for approaching Schuster unsupported by reasonable suspicion. Contrary to the numerous factual statements given by Karst that he saw Schuster's motorcycle fall and approached to provide assistance, Schuster argues that Karst was using the accident as a pretext for the DWI investigation. Schuster bases his argument on the facts that Karst stated in his testimony before MVD that his primary objective that night was as a DWI enforcement officer, that Karst noted numerous DWIs occur at night around the bar Schuster was leaving, and that Karst never actually saw him driving the motorcycle before he fell. Because we review the facts as established by MVD under a substantial evidence standard, we conclude that Schuster did not meet his burden of proving, under the totality of circumstances, that Karst's motive was unrelated to his motivations as a community caretaker. *See Jason L.*, 2000-NMSC-018, ¶ 10 ("The appellate court must defer to [the factfinding] court with respect to findings of historical fact so long as they are supported by substantial evidence.").

**{37}**    Even if we assume that Schuster met his burden under the second prong, Karst's stop was not pretextual if the State can show that the totality of the circumstances support the conclusion that Karst would have made the stop regardless of the pretextual intent. Karst testified that regardless of the surrounding circumstances, if "you crash a [motorcycle] in front of a cop, you're getting helped." Karst testified that he personally observed Schuster's motorcycle fall, and, regardless whether he actually observed the fall, Karst saw the motorcycle on the ground. Observing Schuster with his motorcycle on the ground certainly gave Karst a motive for approaching Schuster regardless of any pretextual intent—to simply ensure that Schuster was not injured from the fall. Thus, we conclude that the State met its burden that Karst's encounter was constitutional and not pretextual.

11

## III. CONCLUSION

**{38}** We hold that (1) under Sections 66-8-112(E)(2) and G, MVD must find the arrest and underlying police activity leading to the arrest are constitutional as a prerequisite to revoking a driver's license under the Implied Consent Act; (2) that a district court reviews constitutional questions arising from a license revocation hearing as an appellate court; and (3) in this case MVD and the district court correctly concluded that revocation of Schuster's driver's license was proper. Accordingly, we affirm.

**{39}    IT IS SO ORDERED.**

_____
**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**CHARLES W. DANIELS, Justice**

**Topic Index for _Schuster v. NM Dept. of Taxation & Revenue_, Docket No. 32,942**

**ADMINISTRATIVE LAW AND PROCEDURE**
Administrative Appeal

**APPEAL AND ERROR**
Standard of Review

**CONSTITUTIONAL LAW**
Exclusionary Rule
Fourth Amendment
New Mexico Constitution, General

**CRIMINAL PROCEDURE**
Exigent Circumstances
Implied Consent

Pretextual Stop
Revocation of Driver's License

**GOVERNMENT**
Implied Consent Act

**JURISDICTION**
Appellate Jurisdiction
District Court

**STATUTES**
Interpretation