# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: June 29, 2015

**No. 33,101**

**MYRON G. YEPA,**

Petitioner-Appellee,

v.

**STATE OF NEW MEXICO TAXATION AND REVENUE DEPARTMENT, MOTOR VEHICLE DIVISION,**

Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**Louis P. McDonald, District Judge**

Southwest Indian Law Clinic
Barbara Creel, Supervising Attorney
Veronica C. Gonzales, Law Student
Heidi J. Todacheene, Law Student
Albuquerque, NM

for Appellee

Hector H. Balderas, Attorney General
Taxation and Revenue Department, Legal Services Bureau
Peter A. Breen, Special Assistant Attorney General
Santa Fe, NM

for Appellant

**OPINION**

**WECHSLER, Judge.**

{1} On appeal, we are presented with the question whether the application of the ignition interlock requirement set forth in NMSA 1978, Section 66-5-33.1 (2009), to an individual whose license was revoked prior to the effective date of the amendment, violates the prohibition against ex post facto laws. As a preliminary matter, we hold that the district court properly had jurisdiction of this case involving a constitutional challenge because it raised a purely legal issue not requiring exhaustion of administrative remedies. On the merits, because we conclude that the amendment was not penal for the purposes of ex post facto constitutional analysis, we hold that there was no constitutional violation. We therefore reverse.

**BACKGROUND**

{2} Petitioner Myron G. Yepa was arrested for aggravated driving under the influence of intoxicating liquor or drugs (DWI) in New Mexico on September 7, 2008. As a consequence, effective September 27, 2008, the Taxation and Revenue Department, Motor Vehicle Division (MVD) revoked his license for a period of six months pursuant to the Implied Consent Act, NMSA 1978, §§ 66-8-105 to -112 (1978, as amended through 2007). The criminal charge against Yepa was dismissed on December 10, 2008, and he became eligible for license reinstatement under the

Implied Consent Act on March 28, 2009. At that time, no ignition interlock requirement existed as a prerequisite to license reinstatement. However, effective July 1, 2009, the Legislature amended the statutory license reinstatement requirements to include a minimum of six months of driving with an ignition interlock device before reinstatement of a revoked license. Section 66-5-33.1(B)(4) (the 2009 amendment). Yepa did not request reinstatement of his license until after the amendment came into effect. MVD applied the ignition interlock requirement and denied the request as a result of Yepa's failure to comply.

{3} Yepa subsequently filed the underlying action in district court, seeking a declaration that the ignition interlock requirement was improperly applied to him. The district court ultimately concluded that MVD's application of the 2009 amendment to Yepa constituted a violation of the constitutional prohibition against ex post facto laws. This appeal followed.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

{4} We initially address a jurisdictional question. MVD argues that Yepa should have challenged the denial of his request for reinstatement of his license by pursuing an administrative appeal. In light of his failure to do so, MVD contends that the underlying action should have been dismissed.

2

{5} According to MVD, NMSA 1978, Section 66-2-17 (1995) provides an exclusive statutory remedy for any party aggrieved by any licensing decision. That statutory section sets forth the administrative appeals process. Under Section 66-2-17(A), "any person may dispute" the denial of a license pursuant to the administrative appeals procedure outlined in subsequent portions of the statute, "[u]nless a more specific provision for review exist[s]." Section 66-2-17(I) specifies as follows:

> No court of this state has jurisdiction to entertain any proceeding by any person in which the person calls into question the application to that person of any provision of the Motor Vehicle Code, except as a consequence of the appeal by that person to the district court from the action and order of the secretary or hearing officer as provided for in this section.

{6} We agree with MVD in its basic premise. "Under the exhaustion of administrative remedies doctrine, where relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed." *Smith v. City of Santa Fe*, 2007-NMSC-055, ¶ 26, 142 N.M. 786, 171 P.3d 300 (alteration, internal quotation marks, and citation omitted). However, when the matter at issue is purely legal and requires no specialized agency factfinding, and there is no exclusive statutory remedy, "it is a proper matter for a declaratory judgment action and does not require exhaustion of administrative

3

remedies." *New Energy Econ., Inc. v. Shoobridge*, 2010-NMSC-049, ¶ 12, 149 N.M. 42, 243 P.3d 746.

{7} The district court based its ruling on the constitutional prohibition against ex post facto laws. The ruling involved a purely legal issue that did not require specialized agency factfinding. The only facts found by the district court were uncontested and concerned the relevant dates underlying the constitutional challenge. As a consequence, exhaustion of administrative remedies was not required. *Smith*, 2007-NMSC-055, ¶ 27.

{8} The proposition that a purely legal ruling may be pursued in a declaratory judgment action without administrative review is particularly valid in the circumstances of this case in which the issue involved is a constitutional challenge to the Implied Consent Act. *See Schuster v. State of N.M. Taxation & Revenue Dep't*, 2012-NMSC-025, ¶¶ 19, 22, 283 P.3d 288 (holding that MVD is statutorily required to evaluate the constitutionality of arrests); *Maso v. State of N.M. Taxation & Revenue Dep't*, 2004-NMCA-025, ¶ 12, 135 N.M. 152, 85 P.3d 276 (observing that constitutional questions are generally beyond the subject matter jurisdiction of MVD), *aff'd*, 2004-NMSC-028, 136 N.M. 161, 96 P.3d 286. We are aware of no statutory provision or case law, and MVD has cited none, suggesting that MVD is vested with subject matter jurisdiction to adjudicate constitutional questions such as

4

the ex post facto challenge presented in this case. *See Pickett Ranch, LLC v. Curry,* 2006-NMCA-082, ¶ 45, 140 N.M. 49, 139 P.3d 209 (stating that when no supporting authority for a proposition is cited, this Court may assume that no applicable or analogous authority exists). To the extent that MVD invites us to recognize such sweeping authority in the absence of statutory delegation, we deem it imprudent. *See Kilmer v. Goodwin*, 2004-NMCA-122, ¶ 24, 136 N.M. 440, 99 P.3d 690 ("[A]n administrative agency may not exercise authority beyond the powers that have been granted to it."); *Collyer v. State of N.M. Taxation & Revenue Dep't*, 1996-NMCA-029, ¶ 6, 121 N.M. 477, 913 P.2d 665 ("MVD is vested only with the power to administer and enforce the Motor Vehicle Code as provided by law.").

{9} MVD cites *Alvarez v. State of N.M. Taxation & Revenue Dep't,* 1999-NMCA-006, 126 N.M. 490, 971 P.2d 1280, in support of its position. In that case, the plaintiffs filed a complaint, seeking a declaration that they were entitled to have their driving privileges restored. *Id.* ¶ 3. However, the plaintiffs had not applied for or been denied license reinstatement. *Id.* ¶ 10. Applying Section 66-2-17, we held that the action for declaratory judgment was improper, insofar as the plaintiffs had failed to pursue "the mandated administrative steps necessary to vest jurisdiction in the district court." *Alvarez*, 1999-NMCA-006, ¶ 10.

{10} Two significant considerations render this case distinguishable. First, unlike the *Alvarez* plaintiffs, Yepa applied for license reinstatement, and the request was denied. Accordingly, MVD has rendered a decision, such that ripeness is not a concern. *See generally U.S. West Commc'ns, Inc. v. N.M. State Corp. Comm'n*, 1998-NMSC-032, ¶ 8, 125 N.M. 798, 965 P.2d 917 (observing that the doctrine of ripeness "serves to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties" (internal quotation marks and citation omitted)); *New Energy Econ.*, 2010-NMSC-049, ¶ 17 ("One of the prerequisites of . . . a declaratory judgment action is that . . . the issue involved must be ripe for judicial determination." (second omission in original) (alteration, internal quotation marks, and citation omitted)).

{11} Second, the arguments advanced by the *Alvarez* plaintiffs do not appear to have implicated constitutional principles beyond the scope of MVD's authority. As we have discussed, this distinction is significant in view of MVD's authority to address constitutional issues.

{12} Constitutional challenges that are beyond the scope of MVD's authority are properly brought before the district courts. *See Schuster*, 2012-NMSC-025, ¶ 21

6

("[A]ny constitutional challenge beyond MVD's scope of statutory review is brought for the first time in district court under its original jurisdiction."). As a result, exhaustion of administrative remedies was not required for the district court to rule on the purely legal issue of the ex post facto application of the 2009 amendment to a previous incident triggering a license revocation. *See Smith*, 2007-NMSC-055, ¶ 27 (holding that because a pure question of law was presented that would have been futile to pursue through the administrative appeals process, exhaustion was not required); *State ex rel. Norvell v. Credit Bureau of Albuquerque, Inc.*, 1973-NMSC-087, ¶ 29, 85 N.M. 521, 514 P.2d 40 ("The doctrine of exhaustion of remedies does not require the initiation of and participation in proceedings in respect to which an administrative tribunal clearly lacks jurisdiction, or which are vain and futile."). The district court had jurisdiction under the New Mexico Declaratory Judgment Act, NMSA 1978, §§ 44-6-1 to -15 (1975).

**EX POST FACTO LAWS**

{13} The 2009 amendment imposes a number of conditions upon the reinstatement of drivers' licenses that were suspended or revoked for DWI or for violation of the Implied Consent Act. Among these requirements is completion of "a minimum of six months of driving with an ignition interlock license with no attempts to circumvent or tamper with the ignition interlock device." Section 66-5-33.1(B)(4). As briefly

described in the introductory portion of this Opinion, Yepa's driver's license was revoked in 2008 after he was arrested for aggravated DWI. The criminal charge against him was dismissed in late 2008. He became eligible for license reinstatement in March 2009, but he did not apply for reinstatement until late July 2009, after the effective date of the 2009 amendment. He successfully argued below that the application of the amendment to him constituted an impermissible ex post facto law.

{14} The constitutional prohibition against ex post facto laws is violated "when a statute involving retroactivity is passed that makes criminal a previously innocent act, increases the punishment, or changes the proof necessary to convict the defendant." *State ex rel. Foy v. Austin Capital Mgmt., Ltd.*, 2013-NMCA-043, ¶ 10, 297 P.3d 357 (alteration, internal quotation marks, and citation omitted), *cert. granted*, 2013-NMCERT-003, 300 P.3d 1181.

{15} The first portion of our inquiry concerns retroactivity. "[C]onfusion often arises as to what retroactivity means in particular contexts." *Gadsden Fed'n of Teachers v. Bd. of Educ.*, 1996-NMCA-069, ¶ 14, 122 N.M. 98, 920 P.2d 1052. MVD contends that there is no retroactivity, in that Section 66-5-33.1(B) is not triggered until a person applies for license reinstatement. Yepa contends that application of the 2009 amendment entails retroactivity because it increases the punishment associated with conduct that preceded the effective date of the enactment.

8

**{16}** "A statute or regulation is considered retroactive if it impairs vested rights acquired under prior law or requires new obligations, imposes new duties, or affixes new disabilities to past transactions." *Howell v. Heim*, 1994-NMSC-103, ¶ 17, 118 N.M. 500, 882 P.2d 541. The impairment of vested rights does not appear to be implicated in this case. *Cf. City of Santa Fe ex rel. Santa Fe Police Dep't v. One (1) Black 2006 Jeep*, 2012-NMCA-027, ¶ 11, 286 P.3d 1223 (observing that Section 66-5-33.1 contains no provision for automatic reinstatement upon the expiration of the penalty period and, accordingly, a driver's license remains revoked and cannot be reinstated until compliance with all of the requisites is accomplished). However, the 2009 amendment does require "new obligations, imposes new duties, or affixes new disabilities" to a past transaction by increasing the burden of reinstatement upon drivers whose licenses were revoked before the 2009 amendment came into effect. *Howell*, 1994-NMSC-103, ¶ 17.

**{17}** MVD argues to the contrary on grounds that a statutory amendment "does not operate retroactively merely because some of the facts or conditions which are relied upon existed prior to the enactment." *Id.* (internal quotation marks and citation omitted). However, the implicit focus on the timing of the application for reinstatement, without considering the relationship between the license reinstatement

9

process and preceding events and circumstances, is too simplistic. As our Supreme Court has more recently explained, the relevant inquiry is nuanced:

> [T]o determine whether a statutory amendment is retroactive the court must ask whether the new provision attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates retroactively comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event.

*State v. Morales*, 2010-NMSC-026, ¶ 9, 148 N.M. 305, 236 P.3d 24 (internal quotation marks and citation omitted). Under the 2009 amendment, there is a clear and immediate "connection between the operation of the new rule" (*i.e.*, the ignition interlock requirement) and "a relevant past event" (*i.e.*, the conduct which precipitated the prior license revocation). As a consequence, heightened burdens are imposed on drivers whose licenses were revoked as a consequence of conduct that preceded the passage of the 2009 amendment. Therefore, the 2009 amendment "attaches new legal consequences to events completed before its enactment." *Id.* (internal quotation marks and citation omitted). In light of these considerations, retroactivity is sufficiently involved to require further analysis.[1]

---

[1]We note that Yepa's answer brief suggests that the ex post facto clause contained within the New Mexico Constitution affords greater protection than the United States Constitution. However, Yepa neither cites authority to support this position as a general proposition, nor attempts to demonstrate that the federal analysis is flawed, that there are structural differences between state and federal government,

10

{18} When considering an ex post facto challenge to the application of a statutory amendment, it is necessary to evaluate the nature of the amendment. "[T]he constitutional prohibition on ex post facto laws applies only to penal statutes which disadvantage the offender affected by them." *State v. Nunez*, 2000-NMSC-013, ¶ 112, 129 N.M. 63, 2 P.3d 264 (internal quotation marks and citation omitted). "The prohibition does not apply to penalties that are considered remedial in nature." *Foy*, 2013-NMCA-043, ¶ 11.

{19} Yepa contends that the ignition interlock requirement set forth in the 2009 amendment should be regarded as punitive, as opposed to remedial in nature, because it represents a further step in our Legislature's response to the serious problem of drunk driving, and because it imposes costs and incidental expenses. Although these are material considerations, they are not dispositive. *See State v. Kirby*, 2003-NMCA-074, ¶¶ 31, 38, 133 N.M. 782, 70 P.3d 772 (noting that "simply because the conduct to which the civil penalty applies is already a crime is insufficient, by itself, to render the sanction criminally punitive" and further observing that

or that there are distinctive state characteristics. *See generally State v. Leyva,* 2011-NMSC-009, ¶ 49, 149 N.M. 435, 250 P.3d 861 (describing the interstitial approach by which arguments that the New Mexico Constitution provides greater protection than its federal counterpart may be preserved). We therefore adhere to the established ex post facto jurisprudence and leave for another day the question whether the New Mexico Constitution affords greater protections.

"monetary assessments are traditionally a form of civil remedy" (internal quotation marks and citation omitted)). Yepa also focuses heavily on the consequential impact upon him, individually. MVD counters that Yepa "cannot have it both ways," by asserting that the 2009 amendment is facially invalid on the one hand while also arguing that his "particular personal circumstances" of poverty render the 2009 amendment invalid as applied to him.

{20} Yepa's various claims pertaining to the amendment's unique individual impacts upon him are not relevant to our analysis of whether the ignition interlock requirement is punitive. "[W]hether a sanction constitutes punishment is not determined from the defendant's perspective, as even remedial sanctions carry the sting of punishment." *State ex rel. Schwartz v. Kennedy*, 1995-NMSC-069, ¶ 32, 120 N.M. 619, 904 P.2d 1044 (internal quotation marks and citation omitted). "In order to ascertain whether these sanctions are punitive[,] we must look at the purposes that the sanctions actually serve. We make this determination by evaluating the government's purpose in enacting the legislation, rather than evaluating the effect of the sanction on the defendant." *Id*. (internal citation omitted). Accordingly, we decline to consider the "actual sanctions at stake" in Yepa's "specific case[.]" *Foy*, 2013-NMCA-043*, ¶ 37.

{21} The threshold question is whether the Legislature's intent was to impose punishment. *Id.,* ¶ 15. If "the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil." *Id.* (internal quotation marks and citation omitted).

{22} Yepa asserts that the legislative intent was essentially punitive. He bases this assertion upon isolated comments by individuals, the fact that the requirement may be imposed in the absence of a criminal conviction, and the fact that New Mexico imposes comparatively greater sanctions for drunk driving than other states. However, we do not regard any of these reasons as reliable indicia of legislative intent.

{23} Based on an assessment of the overarching statutory scheme of the Implied Consent Act, including the procedures and penalties imposed, our Supreme Court has previously recognized, in the context of a constitutional double jeopardy analysis, that the Legislature's intent in enacting the provision for revoking and reinstating driver's licenses, including the prior version of Section 66-5-33.1, was civil and remedial. *Kennedy*, 1995-NMSC-069, ¶¶ 28-35, 42. Our Supreme Court stressed that the "state government regulates the activity of driving on the state's highways in the interest of the public's safety and general welfare." *Id.* ¶ 35. The license revocation provision

13

of the Implied Consent Act, the Supreme Court noted, "serves the legitimate nonpunitive purpose of protecting the public from the dangers presented by drunk drivers and helps enforce regulatory compliance with the laws governing the licensed activity of driving." *Id*. It further observed that the Implied Consent Act also has a deterrent effect on drunk drivers, but noted that "[t]he deterrent effect of administrative license revocation is incidental to the government's purpose of protecting the public from licensees who are incompetent, dishonest, or otherwise dangerous." *Id*. ¶ 38.

{24}   The regulatory activity in this case is not distinguishable either because the constitutional protection is different or because the statute at issue pertains to an ignition interlock requirement rather than a license revocation. Indeed, the 2009 amendment required an ignition interlock merely as a condition to reinstatement of a revoked or suspended driver's license. We perceive nothing within the 2009 amendment to suggest a departure from the legislative intent expressed in *Kennedy* that "revocation of a person's driver's license based on the conduct of either failing a blood-alcohol test or refusing to take a chemical test . . . is consistent with the government's goals in implementing the Implied Consent Act and is therefore remedial, not punitive[.]" *Id.* ¶ 42.

{25} We do note, as pointed out by the dissent, although it was not briefed by Yepa, that the statutory provision setting forth the offense of DWI includes a separate provision requiring an offender who is convicted of DWI to obtain an ignition interlock license and device. NMSA 1978, § 66-8-102(N) (2008, amended 2010). In the context of this provision, the dissent relies on dictum in *State v. Valdez*, 2013-NMCA-016, 293 P.3d 909, to assert that the Legislature intended the mandatory installation of ignition interlock devices to be punitive. The defendant in *Valdez*, however, challenged the constitutionality of the mandatory ignition interlock requirement of Section 66-8-102(N) as applied to offenders convicted of DWI "whose impairment is caused not by alcohol but by drugs[.]" *Id.* ¶ 1. In this case, Yepa was not subject to Section 66-8-102(N) because he was not convicted of aggravated DWI. Based on this dissimilar factual scenario, the statutes subject to our analysis here differ from that in *Valdez*. We therefore do not consider the language of Section 66-8-102(N) to alter the Legislature's overarching intent concerning the remedial nature of the Implied Consent Act, the statute underlying this appeal. The general statutory scheme of the Implied Consent Act focuses on the revocation and reinstatement of driver's licenses, not punishment of traffic offenses. Moreover, the bill passed by the Legislature in 2009 only amended the statutory provisions for license revocation and reinstatement under Section 66-5-33.1 and NMSA 1978, § 66-5-503 (2013). *See* 2009

15

N.M. Laws, ch. 254; *Chatterjee v. King*, 2012-NMSC-019, ¶ 12, 280 P.3d 283 ("In addition to looking at the statute's plain language, we will consider its history and background and how the specific statute fits within the broader statutory scheme."). Accordingly, we view the Section 66-8-102(N) requirement as an independent means by which the Legislature intended to deter drunk drivers from endangering the public safety.

{26} We therefore proceed to the second part of the inquiry, to determine whether the 2009 amendment "is so punitive either in purpose or effect as to negate the [Legislature's] intention." *Foy*, 2013-NMCA-043, ¶ 15 (internal quotation marks and citation omitted). We apply a seven-factor test, which entails evaluating:

> (1) whether the sanction involves an affirmative disability or restraint, (2) whether it has historically been regarded as a punishment, (3) whether it comes into play only on a finding of scienter, (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence, (5) whether the behavior to which it applies is already a crime, (6) whether an alternative purpose to which it may rationally be connected is assignable for it, and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Id*. ¶ 16 (alterations, internal quotation marks, and citation omitted). We address each factor in turn.

{27} As to the first factor, we do not consider the ignition interlock requirement to be, on balance, an affirmative disability or restraint, as this factor has been interpreted

and applied. Although compliance with the requirement may entail expense, and although an ignition interlock device may be inconvenient, these considerations do not approach the "infamous punishment of imprisonment." *Id.* ¶17 (internal quotation marks and citation omitted) (utilizing punishments entailing imprisonment or carrying the stigma of criminal conviction as the benchmarks for purposes of identifying sanctions that involve affirmative disability or restraint). While we do not deny that the installation of an ignition interlock device may "carry the stigma of a criminal conviction" because it is also required of offenders, we do not consider this factor to be a substantial disability or restraint because, as demonstrated by this case, an ignition interlock can be required without a criminal conviction. Moreover, and importantly, the larger ignition interlock scheme has a permissive, as opposed to disabling or constraining effect, because it allows individuals to obtain ignition interlock licenses and thereby to continue driving notwithstanding the revocation of their drivers' licenses. NMSA 1978, § 66-5-503 (2009, amended 2013). As a result, the first factor suggests that the 2009 amendment on balance is remedial rather than punitive in nature.

{28}     With respect to the second factor, although in recent years an ignition interlock device has been required of DWI offenders, *see* § 66-8-102(N), we are aware of nothing to indicate that ignition interlock requirements have historically been

17

regarded as punishment. The relative novelty of such requirements suggests no such historical sensibility.

{29} Turning to the third factor, scienter has no bearing on either the application of the ignition interlock requirement or the behavior that led to the preceding license revocation. *See State v. Orquiz*, 2012-NMCA-080, ¶ 15, 284 P.3d 418 (observing that "DWI is a strict liability crime"). This factor lends further support to the remedial nature of the 2009 amendment.

{30} Application of the fourth factor also yields mixed results. We are aware of nothing to suggest that imposition of the ignition interlock requirement is retributional. However, as we have discussed, the requirement may have a deterrent effect. *See Kennedy*, 1995-NMSC-069, ¶¶ 36-37 (recognizing that the sanction of license revocation has a deterrent effect). Nevertheless, "the fact that the regulatory scheme has some incidental deterrent effect does not render the sanction punishment[.]" *Id.* ¶ 37. In light of the larger purpose, which is clearly to enhance public safety by keeping intoxicated drivers off of the roads, the deterrent effect of the ignition interlock requirement is relatively minor. *See id.* ¶¶ 35, 38 (holding that "[t]he deterrent effect of administrative license revocation is incidental" to the greater purpose "of protecting the public from the dangers presented by drunk drivers" and "enforc[ing] regulatory compliance with the laws governing the licensed activity of

18

driving"). We therefore weigh this factor in favor of determining the 2009 amendment to be remedial.

{31} As to the fifth factor, insofar as ignition interlock devices are designed to prevent the driver from operating a vehicle if he or she is intoxicated or impaired, requiring the installation of such a device operates to prevent conduct that is already prohibited by law. *See* NMSA 1978, § 66-5-502(B) (2007, amended 2013) (defining "ignition interlock device" as a device "that prevents the operation of a motor vehicle by an intoxicated or impaired person"); § 66-8-102(A)-(C) (declaring driving under the influence of intoxicating liquor or drugs unlawful). This purpose suggests a punitive nature. *See Foy*, 2013-NMCA-043, ¶ 31 (observing that "when the behavior being punished is already a crime it points in favor of finding the statute to be punitive in nature"). However, "simply because the conduct to which the [sanction] applies is already a crime is insufficient, by itself, to render the sanction criminally punitive[.]" *Kirby*, 2003-NMCA-074, ¶ 38.

{32} With respect to the sixth factor, concerning alternative purposes, the ignition interlock requirement is "one of several tools of regulatory and administrative enforcement" that constitutes "an integral part of an overall remedial regulatory and administrative scheme to protect the public." *Foy*, 2013-NMCA-043, ¶ 33 (internal quotation marks and citation omitted); *see generally Kennedy*, 1995-NMSC-069, ¶¶

19

29-35, 38, 42 (discussing the larger regulatory scheme that arises under the Implied Consent Act and related provisions, including Section 66-5-33.1, and noting that this scheme serves the purpose of protecting the public). This factor suggests that the 2009 amendment is remedial in nature.

{33} Finally, as to the seventh factor, we must consider whether the 2009 amendment "appears excessive in relation to the alternative purpose assigned." *Foy*, 2013-NMCA-043, ¶ 16 (internal quotation marks and citation omitted). "The question is whether the regulatory means chosen are reasonable in light of the nonpunitive objective." *Id.* ¶ 36 (internal quotation marks and citation omitted). We answer this question in the affirmative. In so doing, we note the "close and substantial relationship" between the ignition interlock requirement and the remedial purpose of protecting the public by keeping impaired drivers off of the roads. *Id.* ¶ 38; *see, e.g.*, *City of Albuquerque v. One (1) 1984 White Chevy Ut.*, 2002-NMSC-014, ¶ 16, 132 N.M. 187, 46 P.3d 94 (finding a "clear nexus between" the vehicles seized by the state and the crime of DWI); *Kennedy*, 1995-NMSC-069, ¶ 38 (finding the deterrent (*i.e.* punitive) aspects of revoking a driver's license after a conviction of DWI to be "incidental to the government's purpose of protecting the public"). Accordingly, this factor weighs in favor of concluding the ignition interlock requirement to be remedial.

20

{34} In sum, our analysis reveals that the ignition interlock requirement imposed by the 2009 amendment: (1) on balance does not impose an affirmative disability or restraint; (2) has not been historically viewed as punitive; (3) does not come into play only on a finding of scienter; (4) speaks more to regulating licensed conduct than promoting the traditional aims of punishment; (5) applies to conduct that is already a crime; (6) constitutes an integral part of an overall remedial regulatory and administrative scheme to protect the public; and (7) is not excessive in relation to its remedial purpose. Insofar as six of the seven factors indicate that the 2009 amendment is remedial, on balance, the remedial effects outweigh the punitive effects. *See, e.g.*, *Kirby*, 2003-NMCA-074, ¶¶ 38-39 (arriving at the same conclusion on a similar balance of the relevant factors).

{35} In light of the foregoing, we conclude that the 2009 amendment is not penal for purposes of the constitutional prohibition against ex post facto laws. Accordingly, MVD was improperly enjoined from applying the ignition interlock requirement to Yepa on that basis.

**CONCLUSION**

{36} For the reasons stated, we reverse.

21

{37}    **IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**I CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

**MICHAEL E. VIGIL, Chief Judge (dissenting).**

22

**VIGIL, Chief J., dissenting.**

{38} It might seem odd to ask whether a mandatory sentence following a criminal conviction constitutes punishment. However, I respectfully submit that is the very question which this case presents. Considered in its proper light, Yepa is being subjected to an unconstitutional ex post facto law, and contrary to the holding of the majority, I would affirm.[2]

{39} The United States Constitution prohibits both the federal and state governments from enacting ex post facto laws. U.S. Const. art. 1, § 10, cl. 3 (prohibiting Congress from passing any ex post facto law); U.S. Const. art 1, § 10, cl. 1 (prohibiting any state from passing any ex post facto law). Such laws are also prohibited by the New Mexico Constitution in its own Bill of Rights. N.M. Const. art. II, § 19. "The Latin phrase 'ex post facto' implicates in its literal meaning any law passed 'after the fact.'" *Collins v. Youngblood*, 497 U.S. 37, 41 (1990); *see Foy*, 2013-NMCA-043, ¶ 10 (citation omitted). In my view, the federal and state constitutional prohibitions were violated in Yepa's case.

{40} Criminal actions and driver's license revocations work together. Breath tests of motorists must be administered pursuant to the Implied Consent Act, NMSA 1978, Sections 66-8-105 to -112 (1978, as amended through 2007). When a breath test gives

---

[2]In all other respects, I concur with the majority opinion.

a blood alcohol concentration of .08 or higher, the arresting officer "shall" charge the driver with a violation of NMSA 1978, Section 66-8-102 (2004), and on behalf of the MVD serves notice that the driver's license will be revoked for a period of six months, unless a hearing is requested. Section 66-8-110(C)(1); 66-8-111.1. Upon receipt of a statement signed under perjury from the police officer that a breath test was administered and the result was a blood alcohol concentration of .08 or higher, MVD revokes the driver's license for six months. Section 66-8-111(C)(1) (2005). These statutory provisions were followed. Yepa was administered a blood alcohol test, and because the results were above .08, he was charged with DWI (aggravated) in violation of Section 66-8-102(D)(1), and MVD revoked Yepa's license for six months on the basis that the result of his breath alcohol test was above the .08 per se limit.

{41}    When Yepa became eligible to have his driver's license reinstated in March 2009, there was no ignition interlock requirement for reinstatement. Section 66-5-3.1(B). However, when he did seek reinstatement in July, 2009, a law passed "after the fact" with an effective date of July 1, 2009, had an ignition interlock requirement. This new law now required "a minimum of six months of driving with an ignition interlock license" for license reinstatement. Section 66-5-33.1(B)(4) (2009). The question before us is whether requiring Yepa to comply with the new

24

ignition interlock requirement violates the constitutional prohibition against ex post facto laws.

{42} "The *Ex Post Facto* Clause flatly prohibits retroactive application of penal legislation." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994) (quoted in *State v. Ordunez*, 2012-NMSC-024, ¶ 14, 283 P.3d 282). A statute is "penal" when it makes criminal a previously innocent act, increases the punishment, or changes the proof necessary to convict the defendant. *Ordunez*, 2012-NMSC-024, ¶ 14; *State v. Romero*, 2011-NMSC-013, ¶ 10, 150 N.M. 80, 257 P.3d 900. Moreover, the constitutional prohibition against ex post facto laws applies to all penal statutes, even those that are labeled civil. *Foy*, 2013-NMCA-043, ¶¶ 12-15.

{43} In determining whether a statute is penal, the intent of the Legislature is controlling. *Id.* ¶ 15; *Smith v. Doe*, 538 U.S. 84, 92 (2003). Unlike the majority, I conclude that the intent of our Legislature has very clearly expressed its intention that a mandatory ignition interlock is penal. In 2005, our Legislature enacted significant amendments to the sentencing requirements for DWI convictions. One requirement is that upon a conviction for DWI, the sentencing judge must order installation of an ignition interlock device in the judgment and sentence:

> Upon a conviction pursuant to this section, an offender shall be required to obtain an ignition interlock license and have an ignition interlock device installed and operating on all motor vehicles driven by the offender, pursuant to rules adopted by the [traffic safety] bureau.

25

Unless determined by the sentencing court to be indigent, the offender shall pay all costs associated with having an ignition interlock device installed on the appropriate motor vehicles. The offender shall operate only those vehicles equipped with ignition interlock devices for:

(1)     a period of one year, for a first offender;

(2)     a period of two years, for a second conviction pursuant to this section;

(3)     a period of three years, for a third conviction pursuant to this section; or

(4)     the remainder of the offender's life, for a fourth or subsequent conviction pursuant to this section.

Section 66-8-102(N) (2005). *See* NMSA 1978, Section 66-5-503(B)(1) (2009) (stating that one of the requirements for obtaining an ignition interlock license is installation of an ignition interlock device on any vehicle driven).

{44}     "The establishment of criminal penalties is a legislative function." *State v. Pendley*, 1979-NMCA-036, ¶ 23, 92 N.M. 658, 593 P.2d 755. The Legislature could not be any clearer in expressing its intent that mandatory installation of an ignition interlock device constitutes punishment for committing the criminal offense of DWI. This becomes even more evident when one considers that this mandatory sentence was added to other existing penalties for DWI. As such, only the clearest proof should suffice to override the Legislature's intent and transform what it has denominated a criminal penalty into a civil and nonpunitive regulation. *See Hudson v. United States*,

522 U.S. 93, 100 (1997) (stating that "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty[.]" (internal quotation marks and citation omitted)).

{45} When Yepa was arrested and charged with aggravated DWI in September 2008, the penalty included mandatory installation of an ignition interlock device for a period of one year, Section 66-8-102(N) (2008), and there was no such penalty for reinstatement of a driver's license. After July 1, 2009, however, a new six-month penalty was imposed for reinstatement. *See Collins*, 497 U.S. at 43 ("Legislatures may not retroactively . . . increase the punishment for criminal acts."). It belies reason to conclude that mandatory installation of an ignition interlock device following a criminal conviction is punishment but mandatory installation of an ignition interlock device for reinstatement of a driver's license is not punishment. They are the same.

{46} "If the intention of the legislature was to impose punishment, that ends the inquiry." *Smith*, 538 U.S. at 92. The majority acknowledges that the threshold question is whether the Legislature intended to impose punishment. Majority Opinion ¶ 21. We have already concluded that the Legislature intended mandatory installation of an ignition interlock device to constitute punishment. In *State v. Valdez*, 2013-NMCA-016, ¶ 12, 293 P.3d 909, we noted: "The DWI statute is part of a broad legislative scheme, including the State's separate Ignition Interlock Licensing Act,

27

which applies to those whose "privilege or driver's license has been revoked or denied." Section 66-5-503(A)." We concluded: "The goal of the Legislature was to criminalize DWI and to penalize it with mandatory installation of ignition interlock devices[.]" *Id*. Thus, the majority fails to properly account for the fact that the Legislature imposed mandatory installation of an ignition interlock device as a penalty for DWI, and that this penalty was increased by an additional six months under the new law.

{47}    The majority then assumes that the MVD requirement is part of a regulatory scheme that is civil and nonpunitive. Majority Opinion ¶¶23-25. Finally, the majority then proceeds to analyze whether that statutory scheme is so punitive in either purpose or effect so as to negate its civil, nonpunitive purpose. Majority Opinion ¶¶ 26-34. In my opinion, this analysis does not apply because the legislative intent is clearly expressed that mandatory installation of an ignition interlock device is punishment for DWI.

{48}    For the foregoing reasons, I dissent from the holding that MVD was improperly enjoined from applying the interlock requirement to Yepa on the basis that the 2009 amendment is not penal under the constitutional prohibition against ex post fact laws. I would affirm.

---

**MICHAEL E. VIGIL, Chief Judge**

28